523 A.2d 771

**Ronald E. PARK and Aileen J. Park, His Wife, Appellees,**

v.

**GREATER DELAWARE VALLEY SAVINGS & LOAN ASSOCIATION, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 23, 1986.

Filed March 30, 1987.

---

Robert J. Hoelscher, Philadelphia, for appellant.

William R. Hagner, Paoli, for appellees.

Before WIEAND, OLSZEWSKI and CERCONE, JJ.

OLSZEWSKI, Judge:

This is an appeal from an order granting appellant, Greater Delaware Valley Savings and Loan Association (GDV), restitution in the amount of $1,590.00 plus partial pre-verdict interest at the rate of 5½% simple interest. The $1,590.00 award constitutes the sum of tax and insurance payments made by GDV's predecessor-in-interest, Lansdowne Federal Savings and Loan Association (Lansdowne), which appellees, the Parks, failed to tender to GDV.

Appellant raises two issues on appeal: (1) whether the trial court's findings were at variance with the facts stipulated by the parties; and (2) whether the trial court erred in concluding that pre-verdict interest commences at the time demand is made by the mortgagee (GDV), where the mortgagee recovers pre-verdict interest on the mortgagors' (the Parks) debt resulting from the miscalculations of the mortgagee's predecessor-in-interest (Lansdowne).

We adopt the trial court's accurate statement of the stipulated facts:

In February of 1963, plaintiffs entered into a home mortgage agreement with Lansdowne Federal Savings and Loan Association ("Lansdowne"). The mortgage was security for a loan of $16,000 to be repaid with interest at the rate of 5½% per annum over 25 years.

With each monthly installment of principal and interest, the Parks also paid a portion of the annual taxes and insurance on the property, which Lansdowne paid on behalf of the Parks pursuant to the following clause of the mortgage agreement: "(T)he Mortgagor shall pay monthly to the Mortgagee one-twelfth (½12) of said charges (if same are not certain as to amount, said amount to be reasonably estimated by Mortgagee): and

failure by Mortgagor to pay each month as provided in this paragraph shall be a default hereunder."

During the first thirteen years of this arrangement, Lansdowne underestimated the taxes and insurance which were due in a particular year. As a result, between 1963 and 1975 Lansdowne paid out more for taxes and insurance on the Parks's property than it collected from the plaintiffs. However, the plaintiffs at all times made all requested payments to Lansdowne.

When Lansdowne received payments for taxes and insurance from the Parks', the bank applied the sums to reduce the mortgage principal. Conversely, when Lansdowne made payments for taxes and insurance, the payments were added to the unpaid mortgage balance. The "capitalization" method of accounting was reflected in the plaintiffs' mortgage passbook.

In 1975 Lansdowne merged with defendant, Greater Delaware Valley Savings and Loan Association ("GDV"). The surviving entity changed to the "escrow" method of accounting for the tax and insurance payments on the plaintiffs' property. Under GDV's system of accounting, all tax and insurance payments were credited to a separate account, leaving the mortgage principal unaffected.

It was not until October 31, 1979 that GDV informed the plaintiffs that the principal balance of their loan was not being reduced according to schedule. On that date, GDV by letter advised the Parks' that as a result of Lansdowne's errors, the loan balance was $10,973.86, rather than the $7,756.64 which it should have been under the terms of the mortgage agreement. The $3,217.22 difference was the total of the excess taxes and insurance paid by Lansdowne (Lansdowne paid a total of $1,590.00 more in taxes and insurance than it had collected from the Parks), plus interest at the rate of 5½% dating from February, 1963 ($1,627.22 in interest). In November, 1979, the Parks', under protest, began to pay an additional $39.88 each month to GDV to make up the deficiency.

The Parks' initially sought a declaratory judgment stating that they did not owe GDV either the tax and insurance undercharges or any interest thereon. GDV counterclaimed for all excess taxes and insurance payments made by Lansdowne, plus interest. At argument, counsel for the plaintiffs conceded that GDV was entitled to reimbursement for the tax and insurance undercharges. However, counsel protested paying any interest on the sum which accrued during the period prior to October 31, 1979, the date of GDV's notice to the plaintiffs.

(Trial court opinion at 2–4).

The trial court found in GDV's favor and awarded GDV $1,590.00 for the taxes and insurance premiums that the Parks had not paid to Lansdowne from February 1963 to October 1984. The trial court also awarded partial pre-verdict interest at the rate of 5½% from November 1, 1979 (when GDV made demand on the Parks for payment) to October 1, 1984 (the date of the trial court's order), with credit given for each monthly payment of $39.88 made by the Parks to GDV. GDV, however, was dissatisfied with the court's findings concerning the interest due on the award entered in its favor. GDV, consequently, filed a motion for post-trial relief, seeking an award of interest on the tax and insurance payments retroactive to February 1963 (the period when Lansdowne began advancing more for taxes and insurance on the Parks' property than Lansdowne collected from the Parks). The trial court denied GDV's motion and this timely appeal followed.

■ Appellant's first contention is that the trial court's finding, that GDV "added to the mortgage principal the amount of the undercharges as well as interest," was contrary to the parties' stipulated facts. (*See* trial court adjudication at 8). We recognize that stipulated facts are binding upon the court as well as the parties. *See Commonwealth v. Carheart Corp.*, 450 Pa. 192, 299 A.2d 628 (1973); *George v. Commonwealth, Department of Transportation*, 70 Pa.Commw. 574, 453 A.2d 717 (1982). Appellant additionally argues that the trial court's own specific

findings of fact, based on the parties' stipulations, do not support the trial court's finding which is at issue on this appeal.[1]

■ GDV argues that "when the notion of a *hidden added charge* is removed from the balance, the only significant charge of wrongdoing against GDV is gone." (Brief for appellant at 13) (emphasis added). Thus, it appears that appellant is interpreting the trial court's use of the term "undercharges" to refer to some "hidden added charge." We find that this contention is without merit.

When the trial court stated that GDV "added to the mortgage principal the amount of the undercharges as well as interest," the trial court properly was referring to the amount of money the Parks were undercharged for taxes and insurance from February 1963 to October 1, 1984. The underpaid taxes and insurance plus interest were not viewed by the trial court as a "hidden added charge" by GDV.[2] After reviewing the trial court adjudication, we find

1. Appellant argues that the following findings of fact by the trial court are contrary to the trial court's statement that GDV "added to the mortgage principal the amount of the undercharge as well as interest." (*See* trial court adjudication at 8):

> 6. The Parks submitted a passbook for the mortgage to Lansdowne whenever they made payment. Lansdowne then made entries, including charges for actual amounts disbursed for taxes and insurance, and returned the passbook to the Parks.

Trial court adjudication at 3. *See* Stipulation of facts at 3–4.

> 7. ... All disbursements by Lansdowne for taxes and insurance were added to the unpaid balance. These payments and disbursements are reflected in the Parks' mortgage passbook.

Trial court adjudication at 3. *See* Stipulation of facts at 3.

> 9. ... The Parks were notified of this change by GDV in a letter dated February 18, 1976, and received annual mortgage statements from GDV thereafter. Under the escrow method, advance payments for taxes by the mortgagor, and payments of taxes by the mortgagee, do not affect the principal balance of the loan.

Trial court adjudication at 4. *See* Stipulation of facts at 4–5.

2. The trial court explained:

> The Adjudication was founded on the principles of equity and not on the basis of GDV's accounting practices. Whether the defendant "added" the deficiency and interest into a separate debit or escrow account was immaterial to this court's ultimate conclusion that GDV was not entitled to the full amount of its counterclaim.

Trial court opinion at 9.

that the trial court's statement that, GDV "added to the mortgage principal the amount of the undercharges as well as interest," was not at variance with the facts stipulated by the parties nor was it contrary to the trial court's own specific findings of fact.

The second issue raised in this case is one of first impression in this Commonwealth: when does pre-verdict interest commence where the mortgagee recovers pre-verdict interest on the mortgagor's debt which is the result of the miscalculations of the mortgagee's predecessor-in-interest. We must determine whether pre-verdict interest commences at the time the mortgagee makes demand on the mortgagor for payment or when the mortgagee's predecessor-in-interest began advancing the money on behalf of the mortgagor.[3]

■ We recognize that our scope of review of a final decree in equity is limited. *See Sack v. Feinman*, 489 Pa. 152, 413 A.2d 1059 (1980), *decided after remand*, 495 Pa. 100, 432 A.2d 971 (1981). The decision whether to award pre-verdict interest and the amount of such interest is vested in the discretion of the trial court sitting in equity

---

**3.** The trial court found that GDV was entitled to restitution for the tax and insurance undercharges. The trial court aptly stated:

> GDV's predecessor in interest, Lansdowne, paid all taxes and insurance on the property until it merged with GDV. It is a fundamental legal principal (sic) that one who has been unjustly enriched at the expense of another must make restitution to the other. *Sack v. Feinman*, 495 Pa. 100, 432 A.2d 971 (1981); *Binns v. First Nat'l. Bank*, 367 Pa. 359, 372, 80 A.[2d] 768, 776 (1951); Restatement of Restitution Sec. 1 (1937). Here, Lansdowne paid the tax and insurance debts of the Parks and is entitled to restitution for those sums, for which it has not been reimbursed by the Parks under either a theory of restitution or the mortgage instrument itself, which required the Parks to pay all charges for taxes and insurance to the mortgagee.

Trial court adjudication at 8.

The trial court, after balancing the equities, also properly found that GDV was entitled to pre-verdict interest. Pre-verdict interest is granted "in order to prevent unjust enrichment or where the payment of interest is required to avoid injustice." *Sack*, 489 Pa. at 165, 413 A.2d 1065. Consequently, on appeal, we only must determine when pre-verdict interest should commence in this case.

and should not be disturbed absent an abuse of discretion.[4]
*See Sack supra.* We agree with the trial court that in
determining when interest begins to run on a restitution
obligation owed by the mortgagor to the mortgagee, we are
guided by our Supreme Court's decision in *Murray Hill
Estates, Inc. v. Bastin:*

> An examination of the cases dealing with the charge and
> allowance of interest will disclose many difficulties, but
> the decided trend of courts of law and courts of equity
> has been "to break away from hard and fast rules and
> charge and allow interest in accordance with principles of
> equity, in order to accomplish justice in each particular
> case" ... Unless a case be found, which is a conclusive
> precedent, the safest and at the same time the fairest
> way for a court is to decide questions pertaining to
> interest according to a plain and simple consideration of
> justice and fair dealing.

442 Pa. 405, 410, 276 A.2d 542, 545 (1971) (quoting *McDer-
mott v. McDermott,* 130 Pa.Super. 127, 130, 196 A. 889, 890
(1938)). Since there is no conclusive precedent concerning
the issue raised in this case, we must decide when pre-ver-
dict interest commences based on considerations of "justice
and fair dealing."

■ We find that the trial court did not abuse its discre-
tion in balancing the equities when it concluded that the just
and fairest resolution of this matter required an award of
partial pre-verdict interest to GDV from the date that GDV
gave notice to the Parks. In his comprehensive opinion, the
Honorable Robert S. Gawthrop, III aptly considered the
relevant facts:

> The plaintiffs (Parks) cannot be characterized as
> wrongdoers, either before or after the defendant's (GDV)
> October 31st demand letter. The plaintiffs made all
> requested payments in a timely manner during the first
> sixteen years of the mortgage, and nothing suggests that

---

4. An abuse of discretion occurs when "the record discloses that the
judgment exercised was manifestly unreasonably or the result of
partiality, prejudice, bias, or ill-will." *M. London, Inc. v. Fedders
Corp.,* 306 Pa.Super. 103, 107, 452 A.2d 236, 237 (1982).

they would have refused to pay the necessary increments if requested.[2] Noteworthy too is the Parks' payment, under protest, of the defendant's additional monthly charge of $39.88 to cover the deficiency principal and interest thereon, which this court also considered indicative of the plaintiffs' good faith. Furthermore, there is no evidence that the Parks' were aware prior to the defendant's October 31st notice letter, that the taxes and insurance had been underpaid. Thus, the plaintiffs did not act willfully to deprive Lansdowne or GDV of any funds; instead, they justifiably relied, as they were entitled to do, on the mortgagee's "reasonable estimation" of the charges due. Nothing in the mortgage agreement suggests that the plaintiffs were charged with the responsibility for determining whether the information and requests for payment which they received from the mortgagee were accurate and complete. It follows, therefore, that plaintiffs should not be penalized by awarding the defendant over $1,600.00 in interest simply because Lansdowne mismanaged the plaintiffs' account.

In balancing the equities, the relative degree of fault allocable to each party is also a factor for the court's consideration. *Wade v. S.J. Groves & Sons Co.*, 283 Pa.Super. 464, 424 A.2d 902 (1981). Hence, this court found significant the fact that the defendant waited four years after its merger with Lansdowne before notifying the Parks of the undercharges and their accumulated interest. In essence, GDV sat on the debt owed by the Parks, permitting the interest thereon to mount, and then added the surcharges thus generated to the debt while the plaintiffs, in good faith, believed the mortgage principal was dwindling according to plan. Under the defendant's reasoning, a mortgagee could conceivably undercharge a mortgagor during the initial years of a long-term mortgage, allow the interest on the debt to mount, and then let the avalanche of surcharges hit the mortgagor in the last months of the mortgage. Even without imputing bad faith to either GDV or its predecessor, this

court of equity cannot countenance the result that this rationale entails.

> [2] Indeed, Lansdowne did on three occasions increase the tax and insurance pre-payment charges, which were duly paid by the Parks. However, these increases were insufficient to make up the deficiency at issue here.

(Trial court opinion at 6–8) (footnote in original).

■ In addition, we are not persuaded by GDV's arguments that Lansdowne, not GDV, underestimated the amount of taxes and insurance from 1963 (when the mortgage agreement was executed) to 1975 (when Lansdowne merged with GDV) and that these undercharges impose a hardship on GDV. (*See* Brief for appellant at 18–19). When Lansdowne merged with GDV in 1975, GDV became the mortgagee under the mortgage agreement involved in the instant case. When corporations merge, the surviving corporation succeeds to both the rights and obligations of the constituent corporations. *See Dawejko v. Jorgensen Steel Co.,* 290 Pa.Super. 15, 434 A.2d 106 (1981); 15 Pa.S.A. Sec. 803 (Purdon's 1967). In the case *sub judice,* GDV, as the surviving corporation, succeeded to the rights and obligations of Lansdowne, the constituent corporation. Consequently, GDV bears the responsibility for Lansdowne's errors in underestimating the amount of taxes and insurance that had to be paid on the Park's property.

We acknowledge, as the trial court did, that the Parks "are receiving something of a windfall in that they in effect have been permitted the use of certain sums of money (the money they did not pay in taxes and insurance) for free." (Trial court opinion at 8). Nonetheless, the evidence in this case suggests that the Parks would have paid the necessary increase in the amount of taxes and insurance if Lansdowne had made such a request. In fact, Lansdowne increased the tax and insurance premiums on three occasions and the Parks readily made payments in the increased amount. These increases, however, were insufficient to overcome the deficiency. We find no reason to require the Parks to pay interest for the period before they were notified of the mistakes made by Lansdowne.

We find that the trial court did not abuse its discretion in concluding that considerations of justice and fair dealing were served by the trial court's order which entitled GDV to pre-verdict interest only from the time demand for payment was made (the date of GDV's notice to the Parks). Accordingly, we hold that under the facts of the instant case, pre-verdict interest commenced at the time demand was made by the mortgagee who had previously recovered pre-verdict interest on the mortgagors' debt due to the miscalculations of the mortgagee's predecessor-in-interest.

Order of trial court affirmed. Pre-verdict interest to be paid on the unpaid balance of taxes and insurance ($1,590.00) from the date of GDV's notice to the Parks (November 1, 1979) to the date of the trial court's order (October 1, 1984) at the rate of 5½% simple interest [5] with credit given for each monthly payment of $39.88 made by the Parks to GDV.

<hr>

---

**5.** GDV requested an award of interest of 5½%, the rate of the mortgage agreement.