**LEXINGTON INSURANCE COMPANY, Plaintiff**

v.

**The ABINGTON CO., et al.**

**Civ. A. No. 81–0043.**

United States District Court, E.D. Pennsylvania.

March 21, 1985.

John Justin McCarthy, Norristown, Pa., for plaintiff.

John S. Kokonos, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

DITTER, District Judge.

In 1974, the parties entered into a contract under which the defendants, insurance brokers, agreed to write insurance and obtain reinsurance as agents for plaintiff Lexington Insurance Company (Lexington). Lexington's complaint alleged that defendants failed to remit to Lexington certain premiums they received from persons for whom they had written Lexington insurance policies. Lexington also alleges that defendants failed to procure policies of reinsurance. Default was entered, and, after protracted litigation,[1] the parties eventually stipulated as to the principal amount of damages.[2] Presently before the court is plaintiff's motion for "prejudgment interest" at the market rate. For reasons that follow, this motion will be granted.

The law of Pennsylvania[3] with respect to "prejudgment interest" is, as Judge Adams stated, "far from perspicuous." *Peterson v. Crown Financial Corp.*, 661 F.2d 287, 293 (3d Cir.1981). The confusion appears to stem from the fact that Pennsylvania limits an award of interest as such to specified cases involving breach of contract, but allows for an interest-type remedy for delay in certain other cases. *See Hussey Metals Division v. Lectromelt Furnace Division*, 417 F.Supp. 964, 968–69 (W.D.Pa.1976), *aff'd*, 556 F.2d 566 (3d Cir.1977); Comment, *Allowance of "Interest" on Unliquidated Tort Damages in Pennsylvania*, 75 Dick.L.Rev. 79 (1970).

Interest, as such, must be awarded at the statutory rate[4] in cases of breach of contract, where the plaintiff has established that the defendant defaulted on a promise to pay a definite sum of money or render performance the value of which is ascertainable with exactitude. *See Miller v. City of Reading*, 369 Pa. 471, 87 A.2d 223 (1952); *Nagle Engine & Boiler Works v. City of Erie*, 350 Pa. 158, 38 A.2d 225 (1944). *See also Black Gold Coal Corp. v. Shawville Coal Co.*, 730 F.2d 941 (3d Cir. 1984); *Sun Shipbuilding & Dry Dock Co. v. United States Lines, Inc.*, 439 F.Supp. 671 (E.D.Pa.1977), *aff'd*, 582 F.2d 1276 (3d Cir.1978), *cert. denied*, 439 U.S. 1073, 99 S.Ct. 846, 59 L.Ed.2d 40 (1979); *Restatement (Second) Contracts* § 354 (1982).

While interest, as such, is not available in other actions, three "interest-type" remedies have developed to provide redress for delay or detention. *See Hussey Metals Division*, 417 F.Supp. at 968–69; Comment, *supra*. First, Pa.R.Civ.P. 238 provides a formula for calculating delay damages in cases in which the underlying claim was one for bodily injury, death, or property damage.

Second, a judicially-created rule to compensate for delay has been developed for certain unintentional tort cases falling outside the ambit of Rule 238. *See Citizens Natural Gas Co. v. Richards*, 130 Pa. 37, 18 A. 600 (1889). *See also American Enka Co. v. Wicaco Machine Corp.*, 686 F.2d 1050 (3d Cir.1982). In *Richards*, the

---

1. After defendants failed to answer or appear within the 20-day period prescribed in the Federal Rules of Civil Procedure, plaintiff moved the Clerk to enter a default and default judgment. Both were granted. Defendants thereafter moved the court to set aside the default judgment pursuant to Fed.R.Civ.P. 60(b). I denied this motion. *Lexington Ins. Co. v. Abington Co.*, No. 81–43 (E.D.Pa. Jan. 15, 1982). On appeal, the Third Circuit remanded the case with instructions to take an itemization of plaintiff's damages. *Lexington Ins. Co. v. Abington Co.*, 688 F.2d 822 (3d Cir.1982). Much factual controversy and uncertainty surrounded plaintiff's itemization and defendants' response thereto. This controversy was resolved by the parties' agreeing to the amount that was improperly

withheld and the date from which an interest calculation would be appropriate.

2. The parties agreed that the principal amount of judgment was to be $250,000 and that prejudgment interest would accrue from April 15, 1977 to the date on which the principal amount was entered.

3. In a diversity action, the question of whether to award prejudgment interest is one of state law. *See Jarvis v. Johnson*, 668 F.2d 740 (3d Cir.1982). Both parties agree that Pennsylvania provides the appropriate state law.

4. Pa.Stat.Ann. Tit. 41, § 202 (Purdon Supp. 1984–1985). The legal rate of interest in Pennsylvania is six percent. *Id.*

court noted that interest cannot be recovered in tort actions, but recognized,

> [T]here are cases sounding in tort, and cases of unliquidated damages where not only the principle on which the recovery is to be had is compensation, but where, also, the compensation can be measured by the market value or other definite standard. Such are cases of the unintentional conversion or destruction of property, etc. Into these cases the element of time may enter as an important factor, and the plaintiff will not be fully compensated unless he receive not only the value of his property, but receive it, as nearly as may be, as of the date of his loss.... It is never interest as such, nor as a matter of right, but compensation for delay, of which the rate of interest affords a fair legal measure.

*Id.* at 600. The Third Circuit has held that these common law damages for delay are measured by reference to the statutory rate of interest. *See American Enka*, 686 F.2d at 1057.

Finally, the Third Circuit has held that Pennsylvania law affords a plaintiff damages for delay for "wrongful detention" of money. *See Peterson*, 661 F.2d at 287. Based on a theory of precluding unjust enrichment, this approach provides a court with discretion to award damages at a rate in excess of the statutory rate. *See id.* at 297. *See also American Enka*, 686 F.2d at 1057 n. 5.

In determining which of the four approaches governs this case, I will refer first to the substantive nature of plaintiff's action. Plaintiff's complaint sets forth claims arising from breach of contract, negligence, and fraud. When defendants moved to set aside the default judgment, I ruled that they could establish no meritorious defense to plaintiff's claims, *Lexington Insurance Co. v. Abington Co.* No. 81–43, slip op. at 10–11 (E.D.Pa. Jan. 15, 1982), and the Third Circuit affirmed this aspect of my decision. *See Lexington Insurance Co. v. Abington Co.*, 688 F.2d 822, slip op. at 3–4 (3d Cir.1982). Thus, for purposes of this case, liability has been established on counts sounding in contract, negligence, and fraud. *See generally* 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 55.03[2], at 32 n. 2 (1983).

Reference to the underlying causes of action demonstrates that each of the "prejudgment interest" approaches, except that provided in Rule 238, is implicated in this case. Plaintiff's first claim sets forth a cause of action for breach of a contract to pay a sum of money, and, standing alone, would call for an award at the statutory rate. Plaintiff's negligence claim would trigger the approach to damages outlined by the *Richards* court, and would also call for an award measured by the statutory rate. Plaintiff's fraud claim, however, would not call for the *Richards* approach because, as I read dicta in the Third Circuit's decision in *American Enka*, cases involving intentional conduct and in which a plaintiff seeks restoration of wrongfully withheld funds are governed by *Peterson*, and not *Richards*. *See American Enka*, 686 F.2d at 1057 n. 5. Consequently, with regard to the fraud claim, I would not be limited in my award by the statutory rate.

■ Having found that reference to the established causes of action yields a conflict in the approaches to "prejudgment interest," I will look beyond the characterizations of the substantive dispute and focus on the nature of the remedy that plaintiff seeks. This form of scrutiny appears consistent with Judge Adams' approach in *Peterson*, where he found it unnecessary to determine whether the defendant had committed a particular tort and instead stressed the equitable nature of the remedy which the plaintiff sought. "Our holding is based not on our characterization of the substantive dispute, but rather on the equitable nature of the remedy the plaintiff seeks—restitution of money unjustly received." 661 F.2d at 295.

■ In this case, plaintiff seeks from defendants those funds that were improperly and intentionally withheld. Plaintiff does not seek expectancy damages. It simply seeks to recover the funds which it had delivered to the defendants to procure rein-

surance and which third parties had delivered to defendants as agents of plaintiff. As such, the damages appear to be restitory in nature. Consequently, I believe that application of the market rate of interest is proper. *See Peterson,* 661 F.2d at 297.

The intentional nature of defendants' conduct factors significantly in my decision to apply the market rate. Damages for delay or detention serve the two-fold purpose of affording full compensation to an injured plaintiff and providing a disincentive for a defendant to delay and defend a clearly meritorious lawsuit. *See Peterson v. Crown Financial Corp.,* 553 F.Supp. 114, 116 (E.D.Pa.1982). In this case, I believe those objectives will only be fulfilled by application of the market rate of interest as the basis for calculating a delay award. Only by reference to that standard will plaintiff be fully compensated and the defendant fully dispossessed. To apply the statutory rate would be to allow the defendants, who had full use of the funds for the entire period, to have invested the wrongfully-detained funds at the market rate of interest and be required to pay back the principal and only six percent interest.

In *Murray Hills Estates v. Bastin,* 442 Pa. 405, 276 A.2d 542 (1971), the Pennsylvania Supreme Court stated,

> The decided trend of courts of law and courts of equity has been "to break away from hard and fast rules and charge and allow interest in accordance with principles of equity, in order to accomplish justice in each particular case" .... Unless a case be found, which is a conclusive precedent, the safest and at the same time the fairest way for a court is to decide questions pertaining to interest according to a plain and simple consideration of justice and fair dealing.

*Id.* at 410, 276 A.2d at 545 (quoting *McDermott v. McDermott,* 130 Pa.Super. 127, 130, 196 A. 889 (1938)). In this case, equity and justice compel me to refer to the market rate[5] in determining the appropriate amount of "interest" to be applied.

Neither the plaintiff nor defendants address in their briefs the question of whether to compound interest. The table appended to plaintiff's brief calculates interest on a simple basis. Plaintiff subsequently asked the court to compound any market-rate award it might make. *See* letter from Michael C. McBratnie, Esquire, to the court (March 4, 1985). Counsel for the defendants was given an opportunity to respond to plaintiff's asserted right to compound interest, and argued that if the court were to decide to apply the market rate, then the court should exercise its discretion and award only simple interest. *See* letter from John S. Kokonos, Esquire, to the court (March 14, 1985).

Defense counsel, however, offered no reason why the discretion-influencing

---

**5.** Appended to plaintiff's brief is a table, setting forth the average commercial prime rates of interest for April, 1977—December, 1983. Plaintiff also sets forth the average rate for January—September of 1984. By letter, dated March 4, 1985, plaintiff amended the 1984 figure to reflect activity in the last quarter of that year. Because defendants have not objected to these figures as being inaccurate, I will accept them as the proper measure of the market rate.

In its March 4, 1985, letter, plaintiff also sets forth the average rate of interest for January and February, 1985. I decline to rely on that figure because judgment on the principal amount of damages was entered on January 28, 1985. Based on figures for the daily bank prime loan rate set forth in the *Statistical Releases* of the Federal Reserve, I calculated the average daily prime rate for January 1, 1985—January 28, 1985 to be 10.63%. *See Federal Reserve Statistical Release* (released Jan. 7, 14, 22 & 28, 1985 & Feb. 4, 1985).

The table set forth below represents my calculation of interest. Interest has been compounded. *See* discussion *infra.*

Table

| Year | Average Commercial Prime Rate of Int. | Annual Interest | Judgment (250,000) with Int. |
|------|------|------|------|
| 1977* | 6.84% | 12,112.50 | 262,112.50 |
| 1978 | 9.06% | 23,747.39 | 285,859.89 |
| 1979 | 12.67% | 36,218.45 | 322,078.34 |
| 1980 | 15.27% | 49,181.36 | 371,259.70 |
| 1981 | 18.87% | 70,056.71 | 441,316.41 |
| 1982 | 14.84% | 65,491.36 | 506,807.77 |
| 1983 | 10.79% | 54,684.56 | 561,492.33 |
| 1984 | 12.04% | 67,603.68 | 629,096.01 |
| 1985** | 10.63% | 5,129.97 | 634,225.98 |

\* Interest calculated for April 15, 1977—December 31, 1977
\*\* Interest calculated for January, 1985, only.

factors favor an award of simple interest. To the contrary, the factors which led me to apply the market rate—in particular the intentional nature of defendants' conduct—compel me to conclude that interest should be compound rather than simple. In *Sack v. Feinman*, 489 Pa. 152, 413 A.2d 1059 (1980), a breach of fiduciary duty case, the Pennsylvania Supreme Court stated,

> [T]he principle in such cases is the prevention of unjust enrichment. If the fiduciary makes profits, or gets interest on the money he wrongly takes from the beneficiary, he must be held not only for the profits or interest he makes on such funds, but also for interest on those profits or the interest itself. In no other way can his enrichment be taken from him. Hence, any claim based upon unjust enrichment or restitution, rather than upon compensation or damages, not only permits pre-judgment interest, but also permits an award of compound interest.
>
> ... Whenever the defendant holds money or property that belongs in good conscience to the plaintiff, and the objective of the court is to force disgorgement of his unjust enrichment, interest upon the funds or property so held may be necessary to force complete restitution. This may be true in law as well as in equity.

*Id.* at 163–64, 413 A.2d at 1068 (quoting D. Dobbs, *Remedies* 170 (1973)). In this case, prevention of unjust enrichment can only be ensured by requiring defendants to account for the amounts they could have realized through investment at the market rate. To realize this objective, compounding is indeed appropriate. *Cf. Restatement of Restitution* § 156 comment b (1937); D. Dobbs, *Remedies* 170 & n. 24 (1973).