515 A.2d 321

**Frank L. RIZZO and Lena Rizzo, Appellants**

v.

**Barton A. HAINES, Esquire.**

**Frank L. RIZZO and Lena Rizzo,**

v.

**Barton A. HAINES, Esquire, Appellant.**

Superior Court of Pennsylvania.

Argued March 12, 1986.

Decided Aug. 4, 1986.

Reargument Denied Sept. 30, 1986.

Herbert Braker, Philadelphia, for appellants (at 1882) & for appellees (1944).

Jeffrey R. Lerman, Philadelphia, for appellant (at 1944) and for appellee (at 1882).

Before WICKERSHAM, WIEAND and POPOVICH, JJ.

WICKERSHAM, Judge:

Before us are cross-appeals from the judgment of the Court of Common Pleas of Philadelphia County in this legal malpractice case. For convenience, we shall refer to Frank

and Lena Rizzo as appellants and Barton Haines as appellee.

The genesis of this case began nearly two decades ago, when in September of 1968, Frank L. Rizzo,[1] a 24 year-old, off-duty Philadelphia police officer while driving in his private vehicle, was rear-ended by a City of Philadelphia police vehicle. Mr. Rizzo, who received neck, back, and arm injuries as a result of the collision, retained Anthony J. Caiazzo, Esquire, to represent him in a suit against the City for his personal injuries, and in related matters,[2] on a fifty percent contingent fee basis. Mr. Caiazzo filed a tort action against the City on July 2, 1969, and continued to file various pleadings until July of 1970, when Mr. Rizzo became represented, apparently with Caiazzo's consent, by B. Nathaniel Richter, Esquire, of the firm of Richter, Syken, Ross & Levant, on a forty percent contingent fee basis.[3]

During 1971, the case of *Rizzo v. City of Philadelphia* was assigned to an associate in the Richter firm, Barton A. Haines, Esquire, appellee herein. Shortly before appellee took over the case, Mr. Rizzo underwent several operations which ultimately resulted in the partial paralysis of the right side of his body, rendering him totally disabled in October 1971 at the age of 27. The operations were necessitated by the neck and back injuries Mr. Rizzo had received in the 1968 auto accident.

In early 1973, the relationship between appellee and the Richter office soured and the association terminated. When appellee left the Richter firm, he took with him the *Rizzo* file, among others. The Rizzos, who by this time had become personal friends of appellee's, decided to remain

1. We are informed by the lower court that appellant Rizzo is not related in any way to former Philadelphia Mayor Frank L. Rizzo. *See* Lower ct. op. sur recusal, June 20, 1985, at 16 n. 6.

2. Mr. Rizzo, who ultimately became permanently disabled, was denied a City disability pension on the ground that his injuries were not employment related.

3. According to the testimony in the resulting fee dispute, Mr. Richter agreed to pay Mr. Caiazzo a percentage of the fee Richter would receive. *See* Lower ct. op. in *Rizzo v. City of Philadelphia*, July 20, 1976, at 4.

with appellee, and Mr. Rizzo signed a one-third contingent fee agreement with appellee on February 13, 1973. From that point until the instigation of the instant suit in 1979, appellee continued to represent Mr. Rizzo in the *City* case, and both Rizzos[4] in a second action, begun in October of 1973, against the surgeon, H.T. Wycis, M.D. and the hospital (hereinafter "the *Wycis* case") for medical malpractice.[5]

The *City* case went forward while appellee and defense counsel in the *Wycis* case agreed to hold the latter case in abeyance. The *City* case was tried before the Honorable Merna B. Marshall and a jury from April 21, 1975 thru May 1, 1975. On May 1, 1975, the jury returned a verdict in favor of Mr. Rizzo and against the City in the amount of $450,000. Appellee recommended that the Rizzos take the money rather than appeal and neither side filed post-trial motions. Thereafter, appellee entered a judgment on the verdict, but due to an ensuing fee dispute among appellee, Caiazzo, the Richter estate, and the Richter firm, approximately one-third of the verdict was placed in escrow and the balance of $291,262.35 was paid to the Rizzos.

The lawyers agreed to submit their fee dispute to Judge Marshall for binding decision, and following hearings in January and February of 1976, Judge Marshall entered an order for distribution of the fee on July 20, 1976. Because of her dissatisfaction with both the conduct of the lawyers, and the poor negotiating skills of appellee, she ordered a return from the escrow fund of $50,000 to Mr. Rizzo and divided up the remaining $108,163.16 among the four lawyer litigants. The fee decision was not appealed. Shortly

**4.** Between the time of the filing of the *City* case and the *Wycis* case, the law of Pennsylvania was changed to allow a wife to recover for loss of consortium as a result of her husband's injuries. *See Hopkins v. Blanco,* 457 Pa. 90, 320 A.2d 139 (1974).

**5.** The City attempted to join the Wycis estate, Dr. Wycis having died in June of 1972, as an additional defendant in the *City* case. The Wycis estate filed preliminary objections to the joinder, and the objections were sustained in April of 1974. *See Rizzo v. City of Philadelphia,* 67 D. & C.2d 666 (Phila.1974). On appeal, our court affirmed. *Rizzo v. City of Philadelphia,* 231 Pa.Super. 744, 327 A.2d 181 (1974).

thereafter, appellee, who had received approximately $35,-000 as his share of the fee, procured from Mr. Rizzo, supposedly as a gift, the $50,000 awarded back to him after the fee dispute.

On January 23, 1978, the *Wycis* case was dismissed by the Honorable Harry A. Takiff on a summary judgment motion by defense counsel, on the basis that, *inter alia*, the satisfaction of judgment in the *City* case barred the Rizzos from further recovery. *See Rizzo v. Rohrback*, 8 D. & C.3d 122 (Phila.1978), *aff'd*, 261 Pa.Super. 455, 395 A.2d 995 (1978).

In July of 1979, the Rizzos brought the instant legal malpractice claim against appellee. Appellants requested compensatory and punitive damages on the basis of improper settlement negotiations and handling of the *City* and *Wycis* cases, and other improper conduct. The Honorable I. Raymond Kremer tried the case without a jury for twenty-one days and on January 18, 1984, he entered a finding for appellants and against appellee in the amount of $530,000 in compensatory damages and $150,000 in punitive damages. Thereafter, both sides filed post-trial motions, appellee objecting to the entry of judgment against him, and appellants objecting to the rate of interest awarded, the absence of delay damages, and the amount of the verdict. On January 30, 1985, appellee made a formal motion to disqualify Judge Kremer from the case and vacate the earlier verdict.[6] On June 20, 1985, Judge Kremer denied the post-trial motions of both parties and appellee's motion to disqualify. These appeals timely followed.

Appellants (the Rizzos) raise four issues for our consideration:

1. Where an attorney wrongfully, dishonestly and fraudulently takes his client's funds, should not the monies

---

[6]. At the conference before Judge Kremer on January 18, 1984, the day of his order, appellee made what the trial court recognized as an oral motion to disqualify. *See,* Lower ct. op. sur recusal, June 20, 1985, at 47.

be repaid at the higher market rate of interest instead of the lower legal rate of interest?

2. In that portion of plaintiffs' claim which is based on the malpractice of his attorney in a personal injury case, does Pa.R.C.P. 238 apply?

3. Where an attorney breaches his fiduciary relationship with his client, should the attorney forfeit all rights to compensation?

4. Where an attorney fails to negotiate with a possible [tortfeasor] should the attorney be held responsible for that sum which would have been recovered if the attorney had negotiated the claim?

Brief for Appellants at 2–3.

Appellee raises eight additional issues for our consideration:

1. Is the Lower Court determination that Mr. Haines in bad faith failed to properly pursue and investigate settlement supported by the evidence?

2. Is the Lower Court determination that Mr. Haines prevented the defendant in the underlying case from making an offer supported by the evidence?

3. Is the verdict below improper as a matter of law because [it is] based on the honest exercise of professional judgment by an attorney in matters of strategy and tactics?

4. Is the verdict below improper as a matter of law because it is not supported by competent expert testimony?

5. Is the verdict below improper as a matter of law because it is based on speculation and not actual damages?

6. Is the verdict below insofar as it relates to fees and reimbursements supported by the evidence?

7. Is the verdict below for punitive damages supported by the evidence?

8. Is the verdict below invalid because of the Lower Court's improper denial of the Motion to Disqualify and its improper factual defense and explanation?

Brief for Appellee at 1.

We note initially that our scope of review is limited when reviewing a decision of a lower court sitting as factfinder. For the purposes of our review, the findings of a trial judge sitting without a jury have the same force and effect as a jury's verdict. *Cover v. Cushing Capital Corp.*, 344 Pa.Super. 593, 497 A.2d 249 (1985); *Pato v. Cernuska*, 342 Pa.Super. 609, 493 A.2d 758 (1985). We will only reverse the trial court if its findings are not supported by sufficient evidence or when it committed an error of law. *Piccinini v. Teachers Protective Mutual Life Insurance Co.*, 316 Pa.Super. 519, 463 A.2d 1017 (1983); *Slaseman v. Myers*, 309 Pa.Super. 537, 455 A.2d 1213 (1983); *Winpenny v. Winpenny*, 296 Pa.Super. 299, 442 A.2d 778 (1982). In reviewing the findings of a trial judge, the test is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence, whether we could have reasonably reached the conclusion of the trial judge. *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243 (1983). It is not within our province to find facts or substitute our judgment for that of the trial judge. *Id.*

In light of this narrow scope of review, we have carefully considered the voluminous record, including the opinions of Judge Marshall in *Rizzo v. City of Philadelphia*, Judge Takiff in *Rizzo v. Rohrback*, and the two opinions by Judge Kremer in *Rizzo v. Haines*, the briefs and arguments of the parties, and the applicable caselaw. We have concluded that the first seven issues raised by appellee have been thoroughly and correctly addressed by Judge Kremer in his 96 page opinion on the post-trial motions. Likewise, appellee's remaining issue has been more than thoroughly addressed by Judge Kremer in his 198 page opinion on the recusal motion. Therefore, we need not address these issues.

Turning to appellants' issues, we find the third and fourth issues to be meritless. We are not convinced by the authority cited to us by appellants that the attorney's fees from *Rizzo v. City*, sought by appellants, should be forfeited. Neither *In re Martin*, 237 Pa. 159, 85 A. 88 (1912), nor any other Pennsylvania case authorizes a forfeiture where the attorney's fees were paid in connection with the receipt by the client of benefits such as the verdict of $450,000 in *Rizzo v. City*. Furthermore, even if we were to agree that appellee's fee should be forfeited, which we do not, appellee received only $35,000 of the $95,056.58 sought by appellants in this appeal. The rest of the fee was divided by Judge Marshall among predecessor counsel, and appellee had no further interest or control in the additional amount. Likewise, appellants' claim that they are entitled to $100,000 because of appellee's failure to negotiate the *Wycis* case, is meritless. While Judge Kremer found that appellee negligently negotiated with defense counsel in the *Wycis* case, he assessed no damages for that aspect of the case. We similarly decline to do so.

Finally, appellants contend that they should be awarded both Pa.R.C.P. No. 238 damages on a portion of the verdict in the instant case and prime rate interest on the $50,000 returned by Judge Marshall after the fee dispute in *Rizzo v. City*. In both situations, Judge Kremer's opinion makes it clear that while he thought that appellants' contentions had merit, in the absence of precedent, he left the questions for our court to decide. *See* Lower ct. op., June 20, 1985, at 74–75, 90.

■ First, appellants contend that where an attorney is found to have wrongfully and fraudulently taken his clients' funds, the attorney should be directed to return the funds wrongfully taken plus the market rate of interest rather than the lower, legal rate of interest. The amount of interest awarded in the instant case was the legal rate of six percent, whereas the market rate ranged as high as twenty percent during the relevant period of time. We have carefully examined the caselaw cited to us by the

parties, and in particular, *Lexington Insurance Co. v. Abington Co.*, 621 F.Supp. 18 (E.D.Pa.1985) and *In re Anonymous No. 41 D.B. 83*, 35 D. & C.3d 29 (1985), and conclude that the higher, market rate of interest should be applied under the facts of this case. The lower court held that appellee's taking of the $50,000 should be considered as him holding that sum in a constructive or resulting trust. "To apply the statutory rate would be to allow the [appellee], who had full use of the funds for the entire period, to have invested the wrongfully-detained funds at the market rate of interest and be required to pay back the principal and only six percent interest." *Lexington Insurance Co. v. Abington Co.*, supra at 21.[7]

Second, appellants contend that Rule 238 damages should apply to that portion of their claim which is based on the malpractice of appellee in the personal injury case of *Rizzo v. City*. The lower court held that appellee was negligent in his representation of appellants and the negligence resulted in a loss to appellants of $300,000 in compensatory damages, to which both appellants and the lower court urge us to apply Rule 238 damages.

■ Rule 238 provides for an award of damages "in an action seeking monetary relief for bodily injury, death or property damage...." While we recognize that the underlying cases which precipitated the instant action were both personal injury cases, the instant case was an action for legal malpractice. The rule is explicitly limited by its own language, and we therefore, do not find it applicable to a legal malpractice action. *Compare Colodonato v. Consolidated Rail Corp.*, 504 Pa. 80, 470 A.2d 475 (1983) (rule not applicable to punitive damages); *Wainauskis v. Howard Johnson Co.*, 339 Pa.Super. 266, 488 A.2d 1117 (1985) (rule not applicable to malicious prosecution); *Erie Insurance Exchange v. McGee*, 327 Pa.Super. 56, 474 A.2d 1171 (1984) (rule not applicable to uninsured motorist arbitration

7. Similarly, the market rate of interest should be applied to the $5,000 of costs improperly charged by appellee and returned to appellants by the lower court. *See* Lower ct. op., June 20, 1985, at 71.

awards); *Temporaries, Inc. v. Krane,* 325 Pa.Super. 103, 472 A.2d 668 (1984) (rule not applicable to tortious interference with contract); *Reliance Universal, Inc. of Ohio v. Ernest Renda Contracting Co.,* 308 Pa.Super. 98, 454 A.2d 39 (1982) (rule not applicable in contract actions).

Reversed and remanded for the computation of interest at the market rate in compliance with this opinion. In all other respects, judgment is affirmed.

WIEAND, J., files a concurring opinion.

POPOVICH, J., files a dissenting opinion.

WIEAND, Judge, concurring:

I agree with and join Judge Wickersham's disposition of the issues in this case. If I understand correctly the opinion of the learned trial judge, he would, given discretion, award interest at market rates on the sum of Fifty Thousand ($50,000.00) Dollars which was wrongfully obtained and wrongfully withheld by counsel from his client. The trial judge concluded, however, that he lacked discretion which would have permitted him to award interest at the higher rate. This, in my opinion, was erroneous; the trial judge did have discretion, under the facts of this case, to award interest at market rates. See: *Sack v. Feinman,* 489 Pa. 152, 413 A.2d 1059 (1980); *Murray Hill Estates, Inc. v. Bastin,* 442 Pa. 405, 410, 276 A.2d 542, 545 (1971). See also: *Peterson v. Crown Financial Corp.,* 661 F.2d 287 (3d Cir.1981); *Lexington Insurance Co. v. Abington Co.,* 621 F.Supp. 18 (E.D.Pa.1985). Cf. *Daset Mining Corp. v. Industrial Fuels Corp.,* 326 Pa.Super. 14, 473 A.2d 584 (1984). Therefore, I agree that there should be a remand for the recomputation of interest on the moneys wrongfully withheld.

POPOVICH, Judge, Dissenting:

I dissent to that portion of the opinion denying the appellants damages for the appellee's negligent handling of the *Wycis* case.

The appellant-Frank Rizzo, having been injured by an improperly performed operation by his surgeon, H.T. Wycis, which was precipitated by an automobile accident involving the City of Philadelphia, was denied the potential award recoverable in a medical malpractice suit.

Judge Kramer's determination that the appellee was negligent (conduct—absence of due care—which not only exposed the appellant to, but caused him, injury) entitled the claimant to compensation, since there was no dispute that he was owed a duty of care (competent counsel) and the breach of that duty (not being able to take the case to trial) was the proximate cause of his injury—loss of revenue.

However, the affixing of the market rate of interest to the $50,000 is excessive in the circumstances of this case. Mr. Rizzo received the sum stated from the trial court for the *appellee's* "poor negotiating skills" and "conduct" in the *City* case, and next we learn that the amount is given/transferred/converted to the appellee. At the very least, a question arises as to the dual fault present in relinquishing the monies, thus requiring, at best, that the Rizzos be made whole, but not to the extent contemplated by the court here.

On the question of delay damages allowed by Pa.R.Civ.P. 238, it appears facially appealing to apply Rule 238 to a circumstance where an individual/attorney has purportedly fraudulently obtained his clients funds. However, as stated by the Majority, the Rule has not been extended to encompass such circumstances, being restricted instead to situations where a defendant *causes* bodily injury, death or property damage. I see no justification for expanding Rule 238 as importuned by the appellants and the court below.

Further, we have no way of knowing if the award entered was 125% over that which was proffered by the appellee, since no settlement offer appears to have been made to resolve the dispute short of trial.