595 A.2d 145

**E. Cy GURENLIAN, Appellant,**

v.

**George GURENLIAN and Pamela Gurenlian.** (Two Cases)

Superior Court of Pennsylvania.

Argued May 9, 1991.

Filed July 25, 1991.

104

Bill W. Bodager, Media, for appellant.

William Luskus, Media, for appellees.

Before ROWLEY, President Judge, and CIRILLO and JOHNSON, JJ.

ROWLEY, President Judge:

These consolidated appeals arose from two separate actions brought by E. Cy Gurenlian ("Appellant") against his son and daughter-in-law, George and Pamela Gurenlian. The appeal which is docketed in this Court as No. 2357 Philadelphia 1990 involves the amount of prejudgment interest to be awarded appellant on a constructive trust imposed in his favor on appellees' real estate. The appeal docketed in this Court as No. 1940 Philadelphia 1990 involves the statute of limitations in appellant's action for repayment of an alleged loan to appellees. On October 12, 1990, these appeals were consolidated for our review. The pertinent factual and procedural history of each appeal is as follows.

# I. FACTUAL HISTORY

## A. Appeal at No. 2357 Philadelphia 1990

In 1982, appellant and his two sisters sold their interest in property located on Valley View Road to appellant's son and daughter-in-law, George and Pamela Gurenlian. Pamela typed the agreement of sale which reflected a total purchase price of $45,000.00, consisting of $5,000.00 in cash to appellant and purchase money mortgages of $20,000.00 to each of appellant's sisters. The settlement sheet, however, indicated consideration of $20,000.00 in purchase money mortgages to each sister, but no consideration to appellant. After George and Pamela moved into the Valley View Road property, appellant ate and slept there approximately three times a week from 1982 to 1985. In early 1985, a dispute arose between George and appellant. On May 1, 1985, George notified appellant by certified letter that he would have to vacate the property on Valley View Road.

On August 12, 1985, appellant brought a suit in equity against George and Pamela and requested that the court establish a constructive trust in his favor. The trial court imposed a constructive trust on appellant's behalf in the amount of $5,000.00. Both parties filed appeals. The Superior Court, in an unpublished memorandum, affirmed the trial court's judgment establishing a constructive trust on appellant's behalf, but remanded the case so that the trial court could fashion a decree specifying the manner in which the judgment should be satisfied. 390 Pa.Super. 660, 561 A.2d 824.

On November 1, 1989, the trial court issued an amended decree awarding appellant $6,500.00, which included the $5,000.00 constructive trust plus an award of 6% interest from May 1, 1985, with interest continuing to accrue at the legal rate. Appellant filed a motion to modify the amended decree, but it was denied, and a final order was entered on August 9, 1990. On August 13, 1990, appellant filed an appeal to this Court which has been docketed at 2357 Philadelphia 1990. On appeal, appellant argues that the

trial court abused its discretion when it limited the prejudgment interest on the constructive trust to 6%.

### B. Appeal at No. 1940 Philadelphia 1990

In June 1982, appellant learned that George and Pamela owed the Internal Revenue Service $5,782.89 in unpaid income taxes. Appellant paid the debt to the I.R.S. for George and Pamela and gave them a receipt. On April 20, 1988, appellant instituted a second action against George and Pamela alleging that they owed him $6,000.00 which he had paid on their behalf to the I.R.S. in 1982. At trial, appellant testified that he had loaned George and Pamela $6,000.00, N.T. 9/7/89, at 7; that there was no oral or written agreement regarding repayment, N.T. 9/7/89, at 7–8; but that appellant understood that George and Pamela would pay him back when they were able, N.T. 9/7/89, at 8; and that George had never tried to pay appellant back, N.T. 9/7/89, at 11, 63. George testified that appellant gave him $4,000.00, N.T. 9/7/89, at 45–46, and that, although George tried to pay appellant back twice in 1982, appellant refused, N.T. 9/7/89, at 47, 51. The trial court found that George attempted to repay the money to appellant but that appellant refused to accept the money and indicated that he did not expect to be repaid. T.C. Op. 12/13/90, at 2.

On November 14, 1989, the trial court concluded that appellant's claim was barred by the statute of limitations and entered a verdict in favor of George and Pamela. Appellant filed post-trial motions which were denied in an order entered on June 21, 1990. On July 2, 1990, appellant appealed to this Court. The appeal was docketed at No. 1940 Philadelphia 1990. On August 7, 1990, judgment was entered on the trial court's order of June 21, 1990. On appeal, appellant argues that the trial court erred in holding that appellant's cause of action was barred by the statute of limitations.

### II. APPEAL AT NO. 2357—PREJUDGMENT INTEREST

Appellant first argues that the trial court abused its discretion when it limited the award of prejudgment interest

on the constructive trust to the statutory rate of 6%. Our scope of review of an equity matter is very limited. We must accept the trial court's findings of fact, and cannot reverse the trial court's determination absent a clear abuse of discretion or error of law. *Walley v. Iraca,* 360 Pa.Super. 436, 441, 520 A.2d 886, 889 (1987). A final decree in equity "will not be disturbed unless it is unsupported by the evidence or demonstrably capricious." *Sack v. Feinman,* 489 Pa. 152, 166, 413 A.2d 1059, 1066 (1980).

The determination of whether to award pre-judgment interest and the rate of such interest is left to the sound discretion of the trial court in equity. *Sack v. Feinman,* 489 Pa. at 165, 413 A.2d at 1065–66; *Park v. Greater Delaware Valley Sav. & Loan Ass'n,* 362 Pa.Super. 54, 60, 523 A.2d 771, 774 (1987). A court of equity is not limited to awarding merely the statutory rate of interest, but may award interest above the statutory rate. *Ball v. Rolling Hill Hosp.,* 359 Pa.Super. 286, 302, 518 A.2d 1238, 1246 (1986); *Rizzo v. Haines,* 357 Pa.Super. 57, 65, 515 A.2d 321, 325 (1986), *aff'd,* 520 Pa. 484, 555 A.2d 58 (1989). *See also Lexington Ins. Co. v. Abington Co.,* 621 F.Supp. 18 (E.D.Pa.1985); *Peterson v. Crown Financial Corp.,* 553 F.Supp. 114 (E.D.Pa.1982). "The fairest way for a court is to decide questions pertaining to interest according to a plain and simple consideration of justice and fair dealing." *Murray Hill Estates, Inc. v. Bastin,* 442 Pa. 405, 411, 276 A.2d 542, 545 (1971) (quoting *McDermott v. McDermott,* 130 Pa.Super. 127, 130, 196 A. 889 (1938)).

In the instant suit in equity, appellant acknowledges that the rate of pre-judgment interest to be awarded was within the discretion of the trial court. Appellant claims, however, that the trial court, by awarding interest at the statutory rate of six percent, did not exercise its discretion. He contends that an award of prejudgment interest at a rate higher than the statutory rate was necessary to avoid unjust enrichment to George and Pamela. He also contends that the rate of interest awarded to him should have been either 12%, which his two sisters, the noteholders on the

property, received or the market rate of interest which he could have earned on his principal. According to appellant, restitution will not be complete until he is awarded either 12% or the market rate of interest.

Appellant relies on both Pennsylvania and federal cases to support his contention that the trial court abused or failed to exercise its discretion in awarding prejudgment interest at only the statutory rate of six percent. However, the cases on which appellant relies are readily distinguishable from the instant case. In *Rizzo v. Haines*, 357 Pa.Super. 57, 515 A.2d 321, (1986), *aff'd*, 520 Pa. 484, 555 A.2d 58 (1989), unlike in the instant case, the defendant's conduct was fraudulent. *Rizzo* involved a legal malpractice action brought by a client against his attorney, who had wrongfully and fraudulently taken $50,000.00 of the client's money. The trial court awarded the client prejudgment interest at the statutory rate of six percent. The Superior Court ordered the trial court to compute the interest at the market rate.[1] The Supreme Court affirmed the award of interest at the market rate:

Haines must pay interest at the market rate on the $50,000 that he fraudulently induced his client to transfer to him. Courts in this Commonwealth should not permit a person guilty of fraudulently withholding the funds of another to profit therefrom. Accordingly, where funds are wrongfully and intentionally procured or withheld from one who seeks their restoration, the court should calculate interest on these monies at the market rate.

*Rizzo v. Haines*, 520 Pa. at 508, 555 A.2d at 70 (citations omitted).

In *Sack v. Feinman*, 489 Pa. 152, 413 A.2d 1059 (1980), the defendant fraudulently converted savings bonds placed in trust for the plaintiff. The chancellor declined to award the plaintiff prejudgment interest. The Supreme Court

---

**1.** In his concurring opinion, Judge Wieand noted that the trial court mistakenly believed that it lacked discretion to award interest at a rate higher than the market rate. *See Rizzo v. Haines*, 357 Pa.Super. 57, 65, 515 A.2d 321, 325 (Wieand, J. concurring).

remanded the case to enable the chancellor to make specific findings. The Court concluded that, although the plaintiff was not entitled to prejudgment interest as a matter of right, the chancellor had erred in failing to place on the record findings of fact and conclusions of law from which the Supreme Court could determine whether the chancellor's denial of prejudgment interest was supported by the evidence or was demonstrably capricious. After remand, the Supreme Court found that the chancellor had abused his discretion in awarding no prejudgment interest, and the Court again remanded the case for the chancellor to determine the rate of prejudgment interest to be awarded. *Sack v. Feinman*, 495 Pa. 100, 432 A.2d 971 (1981).

In *Lexington Ins. Co. v. Abington Co.*, 621 F.Supp. 18 (E.D.Pa.1985), the defendants, insurance brokers, improperly and intentionally withheld from the plaintiff insurance company premiums received from third persons. Following the entry of a default judgment against the defendants, the plaintiff sought an award of prejudgment interest at the market rate. The trial court exercised its discretion and awarded the plaintiff a delay award calculated at the market rate of interest:

> The intentional nature of defendants' conduct factors significantly in my decision to apply the market rate. Damages for delay or detention serve the two-fold purpose of affording full compensation to an injured plaintiff and providing a disincentive for a defendant to delay and defend a clearly meritorious lawsuit. In this case, I believe those objections will only be fulfilled by application of the market rate of interest as the basis for calculating a delay award.

*Lexington*, at 21 (citations omitted).

In *Peterson v. Crown Financial Corp.*, 553 F.Supp. 114 (1982), the trial court found that while the defendant/creditor wrongfully retained plaintiff's money, the plaintiff was forced to borrow additional money paying interest from 8% to 12.5%. In awarding the plaintiff prejudgment interest

measured at 2½% above the prime rate of interest, the trial court noted:

> Unless a rate of interest is assessed which is steep enough to force Crown to disgorge any profit it has made by the use of plaintiff's money, and to compensate plaintiff for the costs he encountered as a result of Crown's action, Crown will have profited from its wrongful act and plaintiff will remain, despite a judgment on the merits, a substantial loser in the controversy.

*Peterson*, at 116.

The defendants in the instant case, unlike the defendants in *Rizzo*, *Sack*, and *Lexington* did not fraudulently, intentionally, and wrongfully procure or withhold appellant's money. Further, unlike the plaintiff in *Peterson*, appellant has not demonstrated that an award of interest at the market rate is necessary either to compensate him for losses sustained or to force the defendants to disgorge profits realized. Rather, appellant has failed to support the allegations of unjust enrichment contained in his appellate brief with any specific factual averments. The trial court noted that "[a] court, in equity, is accorded maximum flexibility in fashioning a remedy appropriate to the particular circumstances of the case." T.C. Op. 11/8/90, at 2. However, the trial court concluded that appellant "has suggested no reason nor can this court discern any cause for the imposition of interest in excess of the legal rate which is 6%." Thus, the trial court acknowledged that it could, in its discretion, award interest at a rate higher than 6%. However, it concluded that such an award was not warranted by the evidence in this case. Finding no abuse of discretion, we affirm the order of the trial court.

### III. APPEAL AT NO. 1940—STATUTE OF LIMITATIONS

Appellant next argues that the trial court erred in holding that his cause of action for repayment of a loan was barred by the Statute of Limitations. The parties agree that the

oral agreement between appellant and George is governed by the following statute of limitations:

§ 5525.  **Four year limitation**

The following actions and proceedings must be commenced within four years:

*   *   *   *   *   *

(3) An action upon an express contract not founded upon an instrument in writing.

42 Pa.C.S.A. § 5525(3).  The trial court found that appellant's loan to George was repayable on demand and that, therefore, the "action for repayment would accrue immediately upon lending the money as payment could be requested at any time."  T.C. Op. 12/13/90, at 3.  The trial court also noted that, assuming, *arguendo*, that appellant intended to allow George a reasonable time period before demanding repayment, "a reasonable amount of time expired when the son sold his house and offered to repay [appellant]. . . . Hence, by the conclusion of 1982, [appellant's] cause of action . . . commenced."  *Id.*  The trial court concluded that, since appellant did not institute the instant action for repayment until 1988, the action was barred by the statute of limitations.

Appellant contends that the statute of limitations did not begin running until 1) a demand for payment was made, 2) a reasonable time had elapsed, or 3) George was able to repay the debt.  He further contends that the statute of limitations was tolled when George acknowledged the debt.  Finally, he contends that the family and confidential relationship between himself and George estops George from raising the statute of limitations as a bar to the instant action.  We will address each of appellant's contentions *seriatim*.

## A.  Commencement of Limitations

■■■■  Appellant argues that the statute of limitations did not begin to run until a demand for payment was made.  "[W]here the contract is to pay on the future performance of a condition . . . or at a certain time after demand, there a demand is necessary to a right of action," and the statute of

limitations does not begin running until demand is made. *Cook v. Carpenter (No. 1)*, 212 Pa. 165, 175, 61 A. 799, 803 (1905).[2] "The statute of limitations on a demand note does not begin to run until demand or a payment on principal or interest is made or until judgment is entered on the debt." *Lazzarotti v. Juliano*, 322 Pa.Super. 129, 469 A.2d 216 (1983). *See also*, 51 Am.Jur.2d *Limitation of Actions* §§ 113, 127; 22 P.L.E. *Limitation of Actions*, § 68 (1959). In the instant case, there is no evidence in the record, and appellant has referred to none, which indicates that payment was contingent on the occurrence of a condition precedent or of a demand for payment. Unlike the cases of *Cook v. Carpenter, supra*, and *Lazzarotti v. Juliano, supra*, the instant case did not involve a promissory note[3] which conditioned repayment on the making of a demand. Rather, the agreement between appellant and George was oral and contained no conditions precedent or terms for repayment. Having carefully reviewed the record, we conclude that the agreement in the instant case was not one where a demand was necessary to perfect a cause of action, and, thus, the running of the statute of limitations was not contingent on a demand being made.

■ Appellant also argues that the statute of limitations did not begin to run until either a reasonable time had elapsed or George and Pamela had the ability to repay the debt. Appellant notes that other jurisdictions have held that the statute of limitations accrues after a reasonable period of time or when the debtor is able to pay. *See* Annotation, *When Statute of Limitations Begins to Run*

**2.** In such cases where a demand is necessary to perfect the cause of action and the time of the demand is within the plaintiff's control, the demand must be made within a reasonable time. *Bell v. Brady*, 346 Pa. 666, 31 A.2d 547 (1943). The plaintiff cannot "arrest the running of the statute … for his own convenience." *Id.*, 346 Pa. at 670, 31 A.2d at 550. In the instant case, appellant did not demand repayment prior to instituting the cause of action in April of 1988, over five years after the loan was made. Thus, demand was not made within a reasonable time.

**3.** As to the accrual of the statute of limitations in actions on written instruments, see 42 Pa.C.S.A. § 5525(7).

*Against Action Based on Unwritten Promise to Pay Money Where There is No Condition or Definite Time for Repayment,* 14 A.L.R.4th 1385, 1386 (1985). Even assuming, *arguendo,* that the statute of limitations in the instant case commenced running after a reasonable time or upon George's ability to pay, this would not benefit appellant. George testified, and the trial court found, that George was able to pay and, in fact offered to pay, the debt in September, 1982. N.T. 9/7/89, at 51; T.C. Op. 12/13/90, at 2-3. If the statute began to run at that time, it would have expired in September, 1986—nineteen months before appellant commenced the instant cause of action.

## B.  Tolling

Appellant next argues that the statute of limitations was tolled and began to run anew when, at his deposition on October 30, 1985, George acknowledged the debt. A promise to pay a debt may toll the statute of limitations. 22 P.L.E. *Limitation of Actions,* § 121 (1959). The promise to pay may be express, or it may be implied from an acknowledgement of the debt. *Id.* However, "[b]oth promises to pay and acknowledgments of indebtedness must be unequivocal and unconditional" to take the case out of the statute of limitations. *Receiver of Anthracite Tr. Co. v. Loughran,* 341 Pa. 142, 144, 19 A.2d 61, 62 (1941).

A clear, distinct and unequivocal acknowledgment of a debt as an existing obligation, such as is consistent with a promise to pay, is sufficient to toll the statute. There must, however, be no uncertainty either in the acknowledgment or in the identification of the debt; and the acknowledgment must be plainly referable to the very debt upon which the action is based; and also must be consistent with a promise to pay on demand and not accompanied by other expressions indicating a mere willingness to pay at a future time. A simple declaration of an intention to discharge an obligation is not the equivalent of a promise to pay, but is more in the nature of a

desire to do so, from which there is no implication of a promise.

*Maniatakis' Estate,* 258 Pa. 11, 15, 101 A. 920, 921 (1917) (citations omitted). Statements which are equivocal concerning a promise to pay or which do not clearly identify the debt do not toll the statute of limitations. *See McPhilomy v. Lister,* 341 Pa. 250, 19 A.2d 143 (1941); *Garland Co., Inc. v. J.L. Miller & Sons, Inc.,* 395 Pa.Super. 532, 577 A.2d 917 (1990); *In re Fix' Estate,* 140 Pa.Super. 60, 12 A.2d 826 (1940). *See also,* Annotation, *Necessity and Sufficiency, in Order to Toll Statute of Limitations as to Debt, of Statement of Amount of Debt in Acknowledgment or New Promise to Pay,* 21 A.L.R.4th 1121 (1983).

In the instant case, the following exchange took place during George Gurenlian's deposition:

Q. [Appellant's attorney]: In 1981 did you borrow a substantial sum of money from your father for federal income taxes?

A. [George Gurenlian]: Yes.

Q. Do you recall what the sum was?

A. I think it was either five or six thousand dollars, yes.

Deposition 10/30, 1985, at 22. Although George acknowledged borrowing money from appellant, he did not state that he still owed money to appellant and did not, expressly or impliedly, promise to repay money to appellant. Thus, George's statement at his deposition was not sufficient to toll the statute of limitations.

## C. Estoppel

Finally, appellant argues that the family and confidential relationship between himself and George takes this case out of the statute of limitations. In situations where "because, in whole or in part, of the confidential or fiduciary nature of such family relationship, it would be inequitable to permit the action to be barred by limitations," courts have held that defendants are estopped from pleading the statute of limitations. Annotation, *Fiduciary or*

*Confidential Relationship as Affecting Estoppel to Plead Statute of Limitations*, 45 A.L.R.3d 630, 645 § 10[a] (1972). However, where courts reject the contention that, due to the confidential or fiduciary nature of the relationship, it would be inequitable to permit the action to be barred by limitations, defendants are not estopped from pleading the statute of limitations. *Id.*, at § 10[b]. A confidential relationship occurs when, because of a family relationship or otherwise, "one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest." *Silver v. Silver*, 421 Pa. 533, 537, 219 A.2d 659, 662 (1966) (citations omitted). *See also, Truver v. Kennedy*, 425 Pa. 294, 306 n. 4, 229 A.2d 468, 474 n. 4 (1967).

In *Silver v. Silver, supra,* a mother placed the title to her property in the names of her sons, who promised to reconvey the property to her. The Court noted that a mother-son relationship, without more, was insufficient to establish a confidential relationship. However, the Court concluded that evidence of "the mother-son relationship, along with the evidence that the mother depended upon her sons for advice and [had] customarily abided by their decisions" in similar matters in the past, established a confidential relationship warranting the imposition of a constructive trust. *Id.*, 421 Pa. at 538, 219 A.2d at 662. In the instant case, there is no evidence that appellant acted in reliance on George's or Pamela's financial advice when lending them the money. There is also no evidence that appellant had relied on their advice about financial matters in the past. Although a family relationship existed between George and appellant, the record is insufficient to support the finding of a confidential relationship as would take the case out of the statute of limitations. Accordingly, the trial court did not err in concluding that appellant's cause of action was barred by the statute of limitations. For the foregoing reasons, the judgment is affirmed.

At the appeal docketed at No. 1940 Philadelphia 1990, the judgment entered on August 7, 1990 is affirmed; at the

appeal docketed at No. 2357 Philadelphia 1990, the order entered on August 9, 1990 is affirmed.