NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3951
_____

EQUIPMENT FINANCE, LLC.

v.

STEVEN M. HUTCHISON;
BLUE HORIZON VEGETATIVE RECYCLING & LAND CLEARING, INC.

Steven M. Hutchinson,
                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 09-cv-01964)
District Judge:  Hon. James Knoll Gardner
_____

Submitted Under Third Circuit LAR 34.1(a)
June 28, 2012

Before:  SLOVITER, CHAGARES, and JORDAN, *Circuit Judges*.

(Filed: June 29, 2012)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

        Steven M. Hutchison appeals the judgment of the United States District Court for

the Eastern District of Pennsylvania finding him liable for loans made by Equipment

Finance, LLC ("Equipment Finance") that he did not repay. Hutchison argues that the statute of limitations on Equipment Finance's action for repayment of those loans has lapsed. Because we agree with Equipment Finance that the action is not time-barred, we will affirm the judgment of the District Court.

## I. Background

Beginning in May 2001, Equipment Finance made a series of loans to Hutchison and his North Carolina company, Long Leaf Wood Products, Inc. ("Long Leaf/Mid Atlantic").[1] The first loan was in the amount of $127,803.66 and was evidenced by a promissory note executed under seal indicating that, "[i]n addition to the payment[] provided for [by this note] … , [Long Leaf/Mid Atlantic] promises to pay on demand any additional amounts required to be paid [due to additional loans provided by Equipment Finance] … and this note shall evidence … the payment of all such sums advanced or paid by the Lender."[2] (App. at 12.)

Beginning in July 2002 and continuing until January 2007, Equipment Finance provided Hutchison with 17 additional loan checks totaling $1,352,040.[3] Some of those checks were made out to Hutchison, others were made out to Long Leaf/Mid Atlantic,

---

[1] Hutchison later changed Long Leaf Wood Products, Inc.'s name to Mid Atlantic Timber Company, Inc. For ease of reference, we refer to the company as Long Leaf/Mid Atlantic throughout.

[2] The note further set forth a schedule for repayment for a total amount due of $161,298.87.

[3] Equipment Finance also claimed that there was an 18th check for $30,000 that they gave to Hutchison. Because Equipment Finance could not document that check, it withdrew any claim for that additional amount.

and, in two instances, checks were made out to a company owned by Hutchison's son.[4] All of the checks were deposited in either Hutchison's personal accounts or in a Long Leaf/Mid Atlantic account.[5]

Hutchison only made payments totaling $9,644.78,[6] bringing his total debt to Equipment Finance to $1,503,694.09. Equipment Finance ceased sending money to Long Leaf/Mid Atlantic in 2007. Long Leaf/Mid Atlantic stopped doing business shortly thereafter. Further, the State of North Carolina suspended Long Leaf/Mid Atlantic's corporate existence in 2004 and dissolved the company in 2009 for its failure to file annual reports. In November 2008, Equipment Finance made a demand for repayment but Hutchison did not comply. On May 8, 2009, Equipment Finance filed suit against Hutchison and his son's company. Asserting diversity jurisdiction, Equipment Finance alleged, among other things, breach of contract of the first loan based on the promissory note and breach of implied contract for the loan it said was represented by the remaining 17 checks.

---

[4] The checks written to Hutchison's son's company, Blue Horizon Vegetative Recycling and Land Clearing, Inc. ("Blue Horizon"), were made in error and should have been written to Hutchison or Long Leaf/Mid Atlantic. When Hutchison informed Equipment Finance of that error, it told Hutchison to have his son endorse the checks over to Hutchison and deposit them in his own account, which Hutchison did.

[5] Some of the funds borrowed from Equipment Finance by Hutchison were used to make mortgage payments for property in Wilmington, North Carolina. Equipment Finance intended to buy that mortgage and utilize the property as security for the money advanced.

[6] Those payments were made in partial satisfaction of the first loan check issued pursuant to the promissory note.

After a bench trial, the District Court issued findings of fact and conclusions of law. The Court determined that Long Leaf/Mid Atlantic breached its obligation to repay the first loan and owed Equipment Finance $151,654.09.[7] The Court also determined that it was appropriate to hold Hutchison personally liable for the loan to Long Leaf/Mid Atlantic, since Hutchison was its sole officer, director and shareholder, completely dominated the company, commingled corporate and personal funds, and failed to follow corporate formalities, including the failure to file annual reports with North Carolina. While the statute of limitations for a breach of contract claim in Pennsylvania[8] is four years, 42 Pa. Cons. Stat. Ann. § 5525(a)(7),[9] the Court determined that the action was not time barred because the statute of limitations on an action to recover funds loaned pursuant to a promissory note executed under seal is 20 years, 42 Pa. Cons. Stat. Ann. § 5529(b),[10] and Equipment Finance filed its lawsuit against Hutchison well within that period.

---

[7] That sum represents the difference between the $161,298.87 amount owed and the $9,644.78 amount paid.

[8] There is no dispute that Pennsylvania provides the controlling body of law for this case.

[9] That statute provides: "[T]he following actions and proceedings must be commenced within four years: ... An action upon a negotiable or nonnegotiable bond, note or other similar instrument in writing. Where such an instrument is payable upon demand, the time within which an action on it must be commenced shall be computed from the later of either demand or any payment of principal [or of] interest on the instrument." 42 Pa. Cons. Stat. Ann. § 5525(a)(7).

[10] That statute provides: "Notwithstanding [§ 5525(a)] (relating to four-year limitation), an action upon an instrument in writing under seal must be commenced within 20 years." 42 Pa. Cons. Stat. Ann. § 5529(b).

With respect to the remaining 17 checks, the Court found that an implied-in-fact contract existed between Equipment Finance and Long Leaf/Mid Atlantic and that contract was breached when Long Leaf/Mid Atlantic failed to repay the loan embodied in those 17 checks.[11] The Court determined that, with respect to all 17 checks, there was a single and continuing contract and that the four-year statute of limitations under § 5525(a)(7) did not begin to run until January 2007, at the earliest, when Equipment Finance issued the last of the 17 checks. Likewise, the Court determined that piercing the corporate veil was appropriate to hold Hutchison liable for the those loan checks. Combining the first loan with the 17 additional checks, the Court determined that Hutchison owed Equipment Finance $1,503,694.09.[12] Hutchison timely appealed.

## II.    Discussion[13]

The only issue that Hutchison appeals is the District Court's determination that the action with respect to some of the 17 checks is not time barred. He argues that there was no continuous contract and that the statute of limitations for each check began to run on the day such check was issued. Thus, Hutchison argues, recovery on any check dated

---

[11] As noted above, two of those checks were written out to companies owned by Hutchison's son. The Court determined that Hutchison was liable for those amounts because the checks were endorsed over to, and cashed by, Hutchison.

[12] That sum represents the $151,654.09 total left owing on the promissory note plus the $1,352,040 total of the 17 additional checks.

[13] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's factual findings following a bench trial for clear error and exercise plenary review over its legal conclusions. *McCutcheon v. Am.'s Servicing Co.*, 560 F.3d 143, 147 (3d Cir. 2009).

prior to May 8, 2005 – four years before the filing of the lawsuit on May 8, 2009 – is barred by the statute of limitations. He submits that "[c]hecks are demand notes" (Appellant's Opening Br. at 13), and that the statute of limitations begins to run with "the later of either demand or any payment of principal [or of] interest on the instrument," 42 Pa. Cons. Stat. Ann. § 5525(a)(7). Using that standard, Hutchison submits that $664,000 of the District Court's judgment against him cannot be collected.[14] Equipment Finance argues that the District Court correctly determined that there was a continuing agreement and that loan repayment would not be expected to begin (and the statute of limitations would not start to run) until, at the earliest, after the final loan check was delivered in 2007.

We look to Pennsylvania law to determine whether an implied-in-fact contract existed. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 73 (1938) ("[F]ederal courts exercising jurisdiction in diversity of citizenship cases … apply as their rules of decision the law of the state … ."). The nature of an implied-in-fact contract must be ascertained from all the facts and circumstances. *See Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 659 (Pa. 2009) (citing *Ingrassia Construction Company v. Walsh*, 486 A.2d 478, 483 (Pa. Super. Ct. 1984), for the proposition that an implied-in-fact contract may arise where "the ordinary course of dealing and the common understanding of men, show a mutual intention to contract" (citation omitted)); *Ingrassia*, 486 A.2d at 483 (stating that the existence and nature of an implied-in-fact contract is determined by

---

[14] The checks that Hutchison argues are time barred were dated between July 1, 2002 and October 8, 2004.

6

the parties' "outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions"). Where the facts and circumstances show the existence of a continuing contract, the statute of limitations does not begin to run until "the breach occurs or the contract is … terminated." *Wm. B. Tenny, Builder & Developer v. Dauphin Deposit Bank & Trust Co.*, 448 A.2d 1073, 1075 (Pa. Super. Ct. 1982) (citation omitted).

The District Court found that the facts and circumstances with respect to the 17 checks showed the existence of a continuing contract. Those facts included the depositing of all checks into accounts controlled by Hutchison, the promissory note's reference to future payments, the continuous nature of the checks, the November 2008 demand letter, and the other conduct of the parties. Therefore, the statute of limitations did not begin to run until, at the earliest, Equipment Finance delivered the final loan check in January 2007. We see no sound basis to disturb the District Court's fact-finding and legal conclusions, and because Equipment Finance brought the present action less than four years after January 2007, the entire amount is recoverable.

Hutchison asserts that several facts indicate that the loan checks should be considered distinct rather than a continuing contract. First, he argues that the checks were made out to different entities including Long Leaf, Mid Atlantic, Hutchison himself, and, in two cases, his son's company, Blue Horizon. He submits that, "had there been a continuous contract, all of the payees of the checks would have been exactly the same." (Appellant's Opening Br. at 10.) Second, while Hutchison concedes the District Court's factual determination that there was an agreement with respect to the first check, he

disputes that "the checks fall into the language of the Promissory Note." (*Id*.) Rather, he argues that the 17 additional checks were demand notes that were both separate from each other and from the promissory note evidencing the first loan and that "the Statute of Limitations begins to run on the date of [the issuance] of [each loan] check." (*Id*. at 11.) Appellant submits that to hold otherwise would allow Equipment Finance and other lenders to start the clock on the statute of limitations at the time of their choosing when they make a demand for repayment. Such a result, he argues, permits Equipment Finance to "arrest the running of the Statute of Limitations … by resting on its laurels and waiting until it files suit to say that demand was made." [15] (*Id*. at 8.)

We disagree. On the facts of this case, Hutchison elevates form over substance when he argues that the loans should be considered distinct because the checks were made out to different individuals or entities. All of the checks were intended for Hutchison and his business, and they were treated that way. They were ultimately

---

[15] In his brief, Hutchison cites *Gurenlian v. Gurenlian*, 595 A.2d 145 (Pa. Super. Ct. 1991) to support his argument that the statute of limitations begins to run as soon as each check was issued. In *Gurenlian*, the court distinguished a promissory note from a demand note and indicated that a promissory note conditioned repayment upon the making of a demand while a demand note did not have such a condition. The Court thus reasoned that the statute of limitations on a promissory note would not begin until a demand is made, but for a demand note, "the running of the statute of limitations was not contingent on a demand being made." *Id*. at 150.

There is support here, however, for the position that the 17 checks constituted a unitary loan since the first loan check was issued pursuant to a promissory note and provided for the possibility of additional payments, and the District Court determined that that was the parties' intent.

8

deposited in accounts controlled exclusively by Hutchison and used for his benefit or for the benefit of the company he treated as an alter ago.

Because we agree with the District Court that the present case presents a continuous agreement, Hutchison's remaining arguments are unavailing. Contrary to Hutchison's assertions, Equipment Finance did not "rest on its laurels" but rather made a demand in the months following the final check and brought suit the following year due to Hutchison's failure to comply with that demand. As a result, Equipment Finance's action is not barred by the relevant statute of limitations.

## III.    Conclusion

For the forgoing reasons, we will affirm the judgment of the District Court.