J-S30003-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DIEM TRAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HUY LE | : | |
| | : | |
| Appellant | : | No. 2498 EDA 2022 |

Appeal from the Judgment Entered September 1, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  190902811

BEFORE:  BENDER, P.J.E., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 11, 2024**

Appellant, Huy Le, appeals from the judgment in the amount of $94,000.00, entered against him and in favor of Appellee, Diem Tran, following a non-jury trial.  We affirm.

On September 23, 2019, Ms. Tran filed a complaint against Appellant, alleging breach of a contract.  The case proceeded to a non-jury trial — conducted via virtual Zoom conferencing — on April 11, 2022.  At trial, Ms. Tran testified that she has known Appellant for 27 years, that he is best friends with her former husband, Tom (Thanh) Nguyen, and that they did business together.  N.T., 4/11/22, at 32-33, 57.  In 2003, Ms. Tran said that she loaned $40,000.00 to Appellant.  ***Id.*** at 35.  She relayed that, in 2006, she made a second loan to Appellant in the amount of $40,000.00.  ***Id.***  In 2008, Ms. Tran testified that she made a third loan to Appellant in the amount of $27,000.00.  ***Id.*** at 35-36.  According to Ms. Tran, in 2009, she made a fourth and final

loan to Appellant in the amount of $25,000.00.  *Id.*  In sum, Ms. Tran stated that the loans she extended to Appellant from 2003 to 2009 totaled $132,000.00, and that Appellant had been making some repayments.  *Id.* at 37.  She said that Appellant needed the first loan because he bought a house, and that the other three loans were for Appellant's business.  *Id.* at 35-36.  Ms. Tran confirmed that these loans were provided to Appellant pursuant to an oral understanding, and she explained that there was never a written contract pertaining to the loans because, in Vietnamese culture, it showed a lack of trust and would be insulting to enter a written contract with a friend.  *Id.* at 36, 38, 97.[1]

Ms. Tran went on to discuss a series of text messages, written in Vietnamese and translated to English, between the parties, which Ms. Tran introduced as exhibits.  *See generally id.* at 44-68.[2]  Ms. Tran said that, on

_____

[1] Based on the record, it appears that both parties are Vietnamese.  We also note that interpreters were present at trial to interpret English to Vietnamese, and vice versa.

[2] Trial exhibits were not transmitted to us with the record.  We point out that "[i]t is the obligation of the appellant to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal."  *Commonwealth v. Shreffler*, 249 A.3d 575, 584 (Pa. Super. 2021) (citations omitted).  "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty."  *Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006) (citation omitted).  *See also* Explanatory Comment (2004) to Pa.R.A.P. 1931 ("In order to facilitate counsel's ability to monitor the contents of the original record which is transmitted from the trial court to the appellate court,
*(Footnote Continued Next Page)*

August 6, 2017, she texted Appellant because, although Appellant had already paid back a substantial portion of the loan, he had fallen behind on the payments and would not return her phone calls. *Id.* at 47. Ms. Tran said that Appellant responded that he was at a wedding and would call her the next day. *Id.* On September 26, 2017, Ms. Tran relayed that she sent another text message to Appellant, inquiring about the progress of the payments, and Appellant said he would make three months of payments toward the loan. *Id.* at 48. On October 9, 2017, Ms. Tran said she sent a text message to Appellant, stating that he had to pay her monthly. *Id.*

On January 22, 2018, Ms. Tran explained that she sent another text to Appellant, noting that he did not pay that month. *Id.* at 49. Ms. Tran stated that Appellant replied that he would pay her tomorrow. *Id.* On January 26,

_____

[Pa.R.A.P. 1931(d)] requires that a copy of the list of record documents be mailed to all counsel of record, or to the parties themselves if unrepresented, and that the giving of such notice be noted on the record. Thereafter, in the event that counsel discovers that anything material to either party has been omitted from the certified record, such omission can be corrected pursuant to Pa.R.A.P. 1926."). After making an informal inquiry with the trial court, exhibits were transmitted to us. We received Ms. Tran's exhibits, but they were not labeled in accordance with the trial transcript, do not contain English translations for all the text messages, and are not certified by an interpreter. *Cf.* N.T. at 42 (Ms. Tran's counsel's lettering the exhibits); *id.* at 44 (Ms. Tran's counsel's stating that "all of these exhibits are first the original exhibits in Vietnamese, and the translation"); *id.* at 46 (Ms. Tran's counsel's representing that the exhibits contain a certification from a court interpreter); *id.* at 122 (Ms. Tran's counsel's moving Exhibits A through K into evidence). As a result, we are unable to review the English translations for all of the text messages, and must rely on the testimony given at trial about what they say. We note that the parties do not specifically dispute the representations made at trial about what the text messages say.

2018, Ms. Tran said she texted Appellant again, observing that she had not yet received a payment. *Id.* According to Ms. Tran, Appellant responded that he was going to give the money to Mike Mai, Ms. Tran's sister's significant other. *Id.* at 49-50.

On February 26, 2018, Ms. Tran said she sent Appellant a tabulation of the balance due. *Id.* at 50-51. The tabulation showed that, as of January of 2018, Appellant owed Ms. Tran $98,800.00. *Id.* at 52-53.[3] Ms. Tran said that Appellant did not respond. *Id.* at 51. On March 18, 2018, Ms. Tran testified that she sent another text message, urging Appellant to try his best to pay her. *Id.* at 51-52. She said she followed-up again on March 27, 2018, asking Appellant why he was being silent and conveying that he should at least try to pay her a little each month. *Id.* at 52.

In the spring and summer of 2018, Ms. Tran recalled that she continued trying to reach Appellant, and he stated that he would pay her. *Id.* at 54-55. Ms. Tran testified that Appellant made some payments on the loan during the spring and summer of that year. *Id.* at 54. On October 16, 2018, Ms. Tran said she sent Appellant another tabulation. *Id.* The tabulation showed that Appellant owed Ms. Tran $95,600.00. *Id.* Ms. Tran asserted that Appellant responded that he would pay Ms. Tran next week. *Id.* at 56. On October 31, 2018, Ms. Tran said she texted Appellant that he had not paid her yet. *Id.* at

---

[3] The February 26, 2018 tabulation showed that Appellant had made payments in April of 2017, June of 2017, September of 2017, November of 2017, December of 2017, and January of 2018.

- 4 -

57. According to Ms. Tran, Appellant replied that he would pay that evening while at Tom Nguyen's house. *Id.* at 56-57.

Subsequently, in December of 2018, Ms. Tran testified that she again texted Appellant seeking payment. *Id.* at 57. Ms. Tran said Appellant responded that he would pay her tomorrow, and he made a payment in December of 2018. *Id.* at 58. In January and February of 2019, Ms. Tran claimed that she again texted Appellant seeking payment, but he did not respond. *Id.* at 58-60. On February 12, 2019, Ms. Tran relayed that Appellant responded that he would pay her in two weeks. *Id.* at 60. However, by March 4, 2019, Ms. Tran said that Appellant had not sent her a payment. *Id.* She stated that she continued texting Appellant, asking for a payment. *Id.* at 60-61. On March 11, 2019, Ms. Tran said Appellant replied that he gave a payment to Tom Nguyen, but Ms. Tran never received anything. *Id.* at 61-62, 63. According to Ms. Tran, she continued texting Appellant for payment. *Id.* at 61-62. On April 4, 2019, Ms. Tran said she sent Appellant another tabulation, showing a balance due in the amount of $94,000.00. *Id.* at 59, 63.[4] Ms. Tran noted that the last payment Appellant made was in December of 2018. *Id.* at 59-60, 63. Ms. Tran said she continued texting Appellant for payment in April and May of 2019. *Id.* at 63-64.

On May 7, 2019, Ms. Tran said she texted Appellant:

---

[4] The tabulation sent on April 4, 2019, showed, *inter alia*, that Appellant had made payments in November and December of 2018.

[Appellant], you still owe me like the $94,000. I hope you pay me fast and done quick. [Appellant], you and Tom playing football together, I don't really care. The money that I lent you is the real money. You pay me back to me. Thank you. Thanks.

*Id.* at 65 (mostly *verbatim*); *see also id.* at 64. Ms. Tran said she also told Appellant that she was divorced and needed the money. *Id.* at 65.

A few weeks later, on May 21, 2019, Ms. Tran stated that she again texted Appellant asking for payment. *Id.* at 65-66. Ms. Tran said that Appellant responded, "Whoever borrow, you ask that person. Why you keep asking me, my sister, [Ms. Tran]?" *Id.* at 66. Ms. Tran said she sent several text messages telling Appellant he had to pay her. *Id.* at 66-68. Ms. Tran testified that she eventually told Appellant that, if he does not pay her in two weeks, she would search for legal help. *Id.* at 68. Ms. Tran said that Appellant replied that he does not owe her. *Id.*

On cross-examination, Ms. Tran testified that, due to her work schedule, she did not give the loans directly to Appellant, but instead gave the loan amounts, in cash, to Tom Nguyen to give to Appellant. *Id.* at 74. Nevertheless, Ms. Tran stated she had a conversation with Appellant before giving him each loan. *Id.* at 79-80. Ms. Tran agreed that there was no written agreement and, other than the text messages, there is no documentation to prove that Appellant made payments to her. *Id.* at 87, 89. However, Ms. Tran testified that Appellant agreed to pay her each month. *Id.* at 89.

On re-direct examination, Ms. Tran stated that she did not remember when she had the conversations with Appellant before giving him each of the

- 6 -

loans. *Id.* at 99. She also stated that it was understood between the parties that the monies were loans. *Id.* at 99-100.

Tom Nguyen, Ms. Tran's former husband, testified next. He confirmed that he was good friends with Appellant, and he explained that money was given to him to give to Appellant. *Id.* at 104. He also stated that they were temporary loans, confirmed that Appellant would give him money to give to Ms. Tran, and represented that he always turned over the money Appellant gave him to Ms. Tran. *Id.* at 105-06. On cross-examination, Tom Nguyen denied taking money from Ms. Tran and using it to bet on sports. *Id.* at 109-10. He maintained that he does not bet or gamble. *Id.*

Mike Mai — the significant other of Ms. Tran's sister — also testified. He recalled accepting money from Appellant to give to Ms. Tran. *Id.* at 112. On cross-examination, he said that Appellant told him it was a monthly payment to give to Ms. Tran. *Id.* at 117. He also stated that he is not familiar with Tom Nguyen's spending any amount of money on betting. *Id.* at 121.

After Ms. Tran presented her case, Appellant moved for a directed verdict, arguing that the statute of limitations for the loans had expired, asserting a lack of a meeting of the minds between Appellant and Ms. Tran, and advancing that Ms. Tran did not prove that any payment had been made. *Id.* at 122-25. The trial court denied the motion. *Id.* at 128-29.

Appellant then testified. He denied that Ms. Tran ever provided him with a loan. *Id.* at 130; *see also id.* at 135-36 (Appellant's denying, *inter alia*, any agreement with Ms. Tran for the repayment of money and having any

conversation with her about the loans at issue). He claimed that Tom Nguyen used his name and told Ms. Tran that Appellant needed to borrow money, but it was untrue. *Id.* at 130-31. Instead, Appellant said that Tom Nguyen used the money for sports betting, through which Tom Nguyen had lost a lot of money. *Id.* at 130-31, 133-34. In addition, Appellant denied making any payment to Ms. Tran. *Id.* at 135.

On cross-examination, Appellant stated his phone number, which was the same phone number Ms. Tran said she communicated with in the relevant text messages. *Id.* at 139; *see also id.* at 45-46. Appellant admitted that the text-message exhibits were communications between he and Ms. Tran. *Id.* at 142. Ms. Tran's counsel then asked Appellant about various text messages. For the September 26, 2017 text message, when Appellant said he would make a three-month payment to Ms. Tran, Appellant said he never paid the money and that what he meant was that "whenever I can give the money to [Tom] Nguyen and [Tom] Nguyen can get the money to her. So by that he'll be paying her." *Id.* at 145. Further, when asked about his January 26, 2018 text message stating that he would give money to Mike Mai to give to Ms. Tran, Appellant stated that he gave money to Mike Mai, but seemed to indicate that he got the money to give Mike Mai from Tom Nguyen. *Id.* at 148. When asked about whether he recalled seeing the tabulation sent on October 16, 2018, Appellant answered that he "saw it, but I … didn't know what it is." *Id.* at 149. When asked why he responded that he would pay Ms.

Tran next week, Appellant said he was helping Tom Nguyen "because we are friends. Wait for him to give me the money, then I go give it to her." *Id.*

Tommy Nguyen was called to testify next.[5] He stated that he is an owner of a barbershop, where Appellant works. *Id.* at 157. He stated that Tom Nguyen patronized his shop, and he understood that Tom Nguyen used his money on betting and was upset that he lost money. *Id.* at 161. On cross-examination, Tommy Nguyen stated that he did not know anything about loan agreements between Ms. Tran and Appellant. *Id.* at 162.

Appellant called Ms. Tran to testify again. She testified that she did not know if Tom Nguyen ever bet any amount of money. *Id.* at 164. When asked about the May 21, 2019 text message she sent to Appellant referencing football and "real money," she responded:

> … Refer to that text, on the day -- the day that I came before that text, I text him that like I am going to his place, his workplace and get my kids, my three boys get the haircut and he can give me the money while my three sons get a haircut. And I went there. I showed my four kids (phonetic) and my parents-in-law there. And I asked him for the money, and he called me outside and talk. And we went outside and talk. And he said that those money that he owe that he give because of Tom [Nguyen] owe him. And he told me that [Tom Nguyen] and him to go football playing games or something. He said he pay for [Tom Nguyen]. [Appellant] say that he pay for [Tom Nguyen] those amounts, the 94,000 for [Tom Nguyen]. And then [I] said okay, let me call [Tom Nguyen]. And I called [Tom Nguyen] right away. I asked [Tom Nguyen] that night what [Appellant] say that we pay for you. And [Tom Nguyen] said okay, I will talk to [Appellant]. And [Tom Nguyen] called [Appellant] but he didn't answer the phone. You can see in the text message that I text him on few days later.

---

[5] Due to their similar names, we clarify that Tommy Nguyen is a different person than Ms. Tran's former husband, Tom Nguyen.

It says why you didn't answer the phone when [Tom Nguyen] called. And then they talked and I don't know what they talking. And then I text him, okay.

And also that day I saw him, we talked together outside of the hair cuttery, the barbershop, and he told me that like okay, do your part, shoot, sit down and talk, and say okay. We sit down and talk. And then I agree. I agree. Okay. We sit down and talk, three of us, between three of us. And then I text him okay, okay, you want come to my house or he want me to come his house. But he didn't respond to my text.

*** 

And he never give me a chance to talk with him face-to-face, and [Tom Nguyen], between three of us. He said okay, we make appointment for three of us, sit down and talk. But he never made it. From that on I said okay, just give me the money. You got to pay for me. All the texts below, that's it. The question. That my answer to the text that you asked me. That's the whole story.

He doesn't have me, to have me a chance to sit down with him and [Tom Nguyen]. He never make appointment with me. I told him to come to my house or I you want me to come to your house. But he not respond. I am very welcome him to my house. But he never come or he doesn't let me come to his house.

And that's it. That's all the question to the text that I text him. That's all my explanation for why I text that text to [Appellant].

*Id.* at 165-67 (mostly *verbatim*).

Following trial, on April 12, 2022, the trial court simultaneously entered a finding and judgment in favor of Ms. Tran in the amount of $94,000.00. On May 11, 2022, Appellant filed a notice of appeal, which was docketed at 1307 EDA 2022. This Court subsequently quashed that appeal, explaining that the trial court entered judgment prematurely and remanded for Appellant to file post-trial motions. Thereafter, Appellant filed post-trial motions, which the trial court denied, and judgment was entered. Appellant then filed a timely

- 10 -

appeal, and timely complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court thereafter issued a Rule 1925(a) opinion.

On appeal, Appellant raises the following issues for our review:

1. The trial court erred in denying Appellant['s] motion *in limine* to preclude [Ms. Tran] from using any evidence at trial that was not produced in discovery[,] including text messages on April 8, 2022[,] and they prejudiced [Appellant's] ability to properly prepare a defense at the time of trial.

2. The trial court erred in denying Appellant['s] Motion for Judgment Notwithstanding the Verdict [("JNOV")] as [Ms. Tran] failed to prove there was a contract between the parties and [Appellant] breached any such contract; further, the statute of limitations, based upon the testimony elicited at trial[,] had expired many years prior to the institution of civil proceedings by [Ms. Tran] against [Appellant].

3. The trial court erred in denying Appellant['s] Motion for a New Trial as the trial court['s] findings[] in favor of [Ms. Tran] and against [Appellant] was against the weight of the evidence as [Ms. Tran] failed to establish she loaned [Appellant] any money.

4. The trial court erred in denying Appellant['s] motion for judgment on the pleadings/summary judgment as the statute of limitations precluded [Ms. Tran's] claims from proceeding on March 24, 2022[,] as there was no dispute over any of the material facts and [Appellant] was entitled to a judgment as a matter of law on the statute of limitations issue.

5. The trial court erred in overruling Appellant['s] preliminary objections to [Ms. Tran's] amended complaint on April 29, 2020[,] as the statute of limitations precluded [Ms. Tran's] claims from proceeding as the case was barred from proceeding beyond the initial pleading stages for violation of the statute of limitations.

Appellant's Brief at 9-10 (internal citations omitted).[6]

**First Issue**

_____

[6] We have re-ordered Appellant's issues for ease of disposition.

In Appellant's first issue, he avers that the trial court erred in denying his motion *in limine* to preclude Ms. Tran from introducing any evidence at trial that was not produced in discovery, including text messages. Appellant's Brief at 30.[7] Appellant complains that Ms. Tran did not respond to his discovery requests, which asked her to identify each piece of evidence that she planned to use at trial or that would support one of her defenses. *Id.* at 31. Because she did not respond, he suggests that he was unfairly prejudiced. *Id.* at 32.

"A trial court's decision to grant a motion *in limine* is subject to an evidentiary abuse of discretion standard of review." *Frazer v. McEntire*, 265 A.3d 777, 783 (Pa. Super. 2021) (cleaned up). Further, to the extent Appellant was asking the trial court to impose a sanction on Ms. Tran for her failure to respond to discovery requests, we note that,

> the purpose of the discovery rules is to prevent surprise and unfairness and to allow a fair trial on the merits. Pennsylvania Rule of Civil Procedure 4019 provides for sanctions if a party fails to provide discovery. The decision whether to sanction a party, and if so the severity of such sanction, is vested in the sound discretion of the trial court. When a court refuses to impose sanctions, we must review the evidence to determine whether the court abused its discretion.

*Dominick v. Hanson*, 753 A.2d 824, 826 (Pa. Super. 2000) (cleaned up).

Here, the trial court explained that, on February 19, 2020, Ms. Tran produced the text-message exhibits used throughout the trial in her response

---

[7] Appellant explains that he filed a motion *in limine* on December 28, 2021, and Ms. Tran filed a response. The trial court subsequently denied Appellant's motion *in limine* on April 8, 2022. *See id.*

to Appellant's preliminary objections. *See* Trial Court Opinion ("TCO"), 12/5/22, at 4; *see also* Ms. Tran's Answers to Appellant's Motion *in Limine*, 1/2/22, at ¶ 5 (stating that the documentary evidence Ms. Tran intends to use at trial is attached to her response to Appellant's preliminary objections). The trial court reasoned that, because the evidence was produced before trial, Appellant had plenty of time to review the evidence and prepare a defense for trial. TCO at 5. As such, it denied Appellant's motion.

We discern no abuse of discretion by the trial court. Based on the exhibits sent to us from the trial court, our review of the record confirms that Ms. Tran attached the screenshots of all of the text messages introduced at trial to her February 19, 2020 response to Appellant's preliminary objections. While there may not have been English translations for all of the text messages attached to that filing, Appellant had access to the text messages and was equally able to translate them.[8] Thus, there was no surprise or unfairness to Appellant. No relief is due on this first issue.

_____

[8] To the extent any other evidence beyond the text messages was introduced at trial, Appellant does not specifically identify such evidence and explain how that particular piece of evidence surprised and unfairly prejudiced him. ***See Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) ("When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. … This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.") (cleaned up). Thus, any such claims are waived. Nevertheless,
*(Footnote Continued Next Page)*

## Second Issue

In Appellant's second issue, he argues that the trial court erred in denying his motion for JNOV, as (1) the statute of limitations had expired many years prior to the institution of civil proceedings by Ms. Tran against Appellant; and (2) Ms. Tran failed to prove there was a contract between the parties and that Appellant breached any such contract. *See* Appellant's Brief at 9-10. We address each claim in turn.

> Before doing so, we acknowledge our scope and standard of review:
>
> A motion for [JNOV] is a post-trial motion which requests the court to enter judgment in favor of the moving party. There are two bases on which the court can grant [JNOV]:
>
> > One, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.
>
> In an appeal from the trial court's decision to deny [JNOV],
>
> > we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard of review when considering

---

even if not waived, our review of the transcript shows that Ms. Tran only introduced two other exhibits at trial aside from the text messages: Exhibit A, which appears to be requests for admissions she served on Appellant, and Exhibit B, which appears to be her February 19, 2020 response to Appellant's preliminary objections. *See* N.T. at 42; *see also id.* at 10-11. Like the text messages, Appellant appears to have had access to these documents prior to trial, such that no surprise or unfair prejudice would have resulted.

- 14 -

> motions for a directed verdict and [JNOV] are identical. We will reverse a trial court's grant or denial of a [JNOV] only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

> Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact…. A JNOV should be entered only in a clear case.

*A.Y. v. Janssen Pharmaceuticals Inc.*, 224 A.3d 1, 11-12 (Pa. Super. 2019) (cleaned up).

*Statute of Limitations*

In determining that Ms. Tran's action was not barred by the statute of limitations, the trial court stated that text messages between Appellant and Ms. Tran "between August 2017 through December 2018 show conversations regarding consistent payments toward a loan[,]" and that Ms. Tran "would text Appellant the remaining loan balance after each payment." TCO at 4 (citations omitted). It said that "the evidence shows that the statute of limitations commenced in December of 2018, which was the date of the last payment." *Id.* (citation omitted). Because this suit was filed in September of 2019, the trial court concluded that it was filed before the four-year time-bar of the statute of limitations. *Id.*; *see also id.* at 3 (recognizing that, under 42 Pa.C.S. § 5525(a)(3), "[a]n action upon an express contract not founded upon an instrument in writing" must be commenced within four years).

Appellant disputes the trial court's rationale. While he agrees that the statute of limitations is four years, he argues that "[i]n the instant matter, the cause of action for breach of contract began to run in 2009, the date of the last alleged payment from [Ms.] Tran to [Appellant]." Appellant's Brief at 25; *see also id.* at 23. Thus, he says that the statute of limitations expired in 2013, which was six years before Ms. Tran filed this lawsuit. *Id.* at 25-26. Further, Appellant insists that he has not acknowledged the debt such as to toll the statute of limitations. *Id.* at 27; *see also id.* at 35 ("There is no clear, unequivocal acknowledgment of any debt within the statute of limitations.").

The primary — and only binding — case Appellant relies on to support the proposition that the statute of limitations began running when the loan was made is *Gurenlian v. Gurenlian*, 595 A.2d 145 (Pa. Super. 1991). In that case, in June of 1982, a father learned that his son and daughter-in-law owed the Internal Revenue Service ("IRS") $5,782.89 in unpaid income taxes. *Id.* at 147. The father paid the debt to the IRS for the couple and gave them a receipt. *Id.* Subsequently, on April 20, 1988, the father sued the couple, alleging that they owed him $6,000.00, which he had paid on their behalf to the IRS in 1982. *Id.* At trial, the father testified that he had loaned the couple $6,000.00; that there was no oral or written agreement regarding repayment, but that the father understood that the couple would pay him back when they were able; and that the son had never tried to pay him back. *Id.* (citations omitted). In contrast, the son testified that the father gave him $4,000.00,

and that, although he tried to pay the father back twice in 1982, the father refused. *Id.* (citations omitted).

The trial court credited the son's testimony that he had tried to repay the money to the father, but that the father refused to accept the money and conveyed that he did not expect to be repaid. *Id.* (citation omitted). It also determined that the father's claim was barred by the statute of limitations. *Id.* Specifically, the trial court found that the father's loan to the couple was repayable on demand and that, therefore, the "action for repayment would accrue immediately upon lending the money as payment could be requested at any time." *Id.* at 149-50 (quoting trial court opinion; citation omitted). In addition, the trial court observed that, "assuming, *arguendo*, that [the father] intended to allow [the couple] a reasonable time period before demanding repayment, 'a reasonable amount of time expired when the son sold his house and offered to repay [the father]…. Hence, by the conclusion of 1982, [the father's] cause of action … commenced.'" *Id.* at 150 (quoting trial court opinion; citation omitted). Thus, the trial court concluded that, because the father did not commence the action until 1988, the action was barred by the four-year statute of limitations. *Id.*

On appeal, the father argued that the trial court erred in holding that his cause of action for repayment was barred by the statute of limitations. *Id.* In pertinent part, he contended that "the statute of limitations did not begin running until 1) a demand for payment was made, 2) a reasonable time had elapsed, or 3) [the couple] was able to repay the debt." *Id.* Further, he

- 17 -

advanced that the statute of limitations was tolled when his son acknowledged the debt. *Id.*

Upon review, we affirmed the trial court's decision that the statute of limitations barred the action. We initially confirmed that "[a]n action upon an express contract not founded upon an instrument in writing" must be commenced in four years. *Id.* at 149 (citing 42 Pa.C.S. § 5525(3)). We then addressed the father's argument that the statute of limitations did not begin to run until a demand for payment was made. *Id.* at 150. We rejected this argument, as "there is no evidence in the record, and [the father] has referred to none, which indicates that payment was contingent on the occurrence of a condition precedent or of a demand for payment." *Id.* Instead, we noted that the agreement between the father and the couple was oral and contained no conditions precedent or terms for repayment. *Id.* Thus, we concluded that "the agreement in the instant case was not one where a demand was necessary to perfect a cause of action, and, thus, the running of the statute of limitations was not contingent on a demand being made." *Id.*

Next, we examined the father's contention that the statute of limitations did not begin to run until either a reasonable time had elapsed or the couple had the ability to repay the debt. *Id.* We stated that, even if we assumed *arguendo* that the statute of limitations began running after a reasonable time or upon the couple's ability to pay, it would not benefit the father. *Id.* We pointed out that the trial court accepted the son's testimony that he was able to pay, and offered to pay, the debt in September of 1982. *Id.* at 150-51.

Thus, if the statute of limitations began running at that time, it still would have expired in September 1986, which was well over a year before the father commenced his suit. *Id.* at 151.

The father also averred that the statute of limitations was tolled and began to run anew when, at the son's deposition in October 1985, the son acknowledged the debt. *Id.* at 151. There, the son said he borrowed five or six thousand dollars from his father in 1981. *Id.* We explained that:

> A promise to pay a debt may toll the statute of limitations. The promise to pay may be express, or it may be implied from an acknowledgement of the debt. However, both promises to pay and acknowledgments of indebtedness must be unequivocal and unconditional to take the case out of the statute of limitations.
>
> > A clear, distinct and unequivocal acknowledgment of a debt as an existing obligation, such as is consistent with a promise to pay, is sufficient to toll the statute. There must, however, be no uncertainty either in the acknowledgment or in the identification of the debt; and the acknowledgment must be plainly referable to the very debt upon which the action is based; and also must be consistent with a promise to pay on demand and not accompanied by other expressions indicating a mere willingness to pay at a future time. A simple declaration of an intention to discharge an obligation is not the equivalent of a promise to pay, but is more in the nature of a desire to do so, from which there is no implication of a promise.
>
> Statements which are equivocal concerning a promise to pay or which do not clearly identify the debt do not toll the statute of limitations.

*Id.* (cleaned up).

Upon review, we determined that — although the son acknowledged borrowing money from the father — he did not state that he still owed money to the father and did not, expressly or impliedly, promise to repay the loan.

*Id.* Therefore, we deemed the son's statement insufficient to toll the statute of limitations. *Id.*

Here, in contrast to the son's statement acknowledging that he borrowed money from his father in *Gurenlian*, we deem Appellant's texts and payments in the case *sub judice* sufficient to toll the statute of limitations under the acknowledgment doctrine. In support, we point to *Cole v. Lawrence*, 701 A.2d 987 (Pa. Super. 1997). In *Cole*, a doctor treated a patient for several years, with the last treatment ending on March 23, 1991. *Id.* at 988. The doctor then submitted bills for the services he previously rendered to the patient and her health insurer. *Id.* The patient's last payment on the debt was made on November 26, 1991, but her insurer made an additional payment on June 5, 1992. *Id.* After the patient refused to pay the remaining balance despite the doctor's demands, the doctor filed a complaint against her on April 30, 1996. *Id.* The patient claimed that the action was time-barred by the four-year statute of limitations, but the doctor countered that the insurer's partial payment made in June of 1992 tolled the statute of limitations. *Id.* at 989.

On appeal, we noted that there was nothing in the record which demonstrated that the insurer was authorized to make partial payments on the debt on the patient's behalf, and recognized that "[i]n order to toll the statute of limitations, a payment must be made or authorized by the debtor." *Id.* (citation omitted). Nevertheless, we determined that the acknowledgment doctrine still did not apply to toll the statute of limitations. We initially

- 20 -

explained that "there can be no more clear and unequivocal acknowledgement of a debt than payment[,]" and that "[i]n order for a partial payment to toll the statute of limitations, the payment must constitute a constructive acknowledgement of the debt from which a promise to pay the balance may be inferred." *Id.* at 990 (citing *Huntingdon Finance Corp. v. Newtown Artesian Water Co.*, 659 A.2d 1052, 1054-55 (Pa. Super. 1995)). Problematically though, we noted that, "[a]side from the copy of [the doctor's] ledger evidencing his receipt of the payment, there is nothing in the certified record relating to the insurer's payment. Absent such evidence, it would be speculative to infer that the partial payment represented an acknowledgement of the full amount of the existing debt." *Id.* Rather, we reasoned that "the payment can only be construed as an acknowledgement by the insurer that it was obligated, pursuant to its own contracts with [the doctor] and [the patient], to pay a portion of the debt." *Id.* Thus, we opined that, "[u]nder these circumstances, we decline to construe the insurer's partial payment as a clear and unequivocal acknowledgement by [the patient] of the entire antecedent debt. Because the insurer's payment did not constitute an acknowledgement of the existing debt, it does not toll the statute of limitations." *Id.*

Turning back to the matter at hand, even if we accepted *arguendo* Appellant's position that the statute of limitations began running in 2009 when Ms. Tran made the last loan to Appellant, Appellant's subsequent behavior tolled the time-bar. Upon viewing the evidence in the light most favorable to

Ms. Tran as the verdict winner, *see A.Y.*, *supra*, it shows that Appellant was making payments on the loans as late as December of 2018. N.T. at 58, 59-60, 63. Further, on October 16, 2018, Ms. Tran sent Appellant a tabulation of what he still owed her, which reflected a balance of $95,600.00, and Appellant responded he would pay her next week and then made payments to her thereafter. *Id.* at 54, 56; *see also id.* at 58, 59-60, 63.[9] Pursuant to *Cole*, we view this as an acknowledgment of the full amount of the debt owed, from which a promise to pay the remaining balance may be inferred.[10] As such, we conclude that Ms. Tran's action, filed in September of 2019, was not barred by the statute of limitations.

### Sufficiency of the Evidence

Appellant next argues that the evidence was insufficient to sustain Ms. Tran's claim for breach of contract. He advances that Ms. Tran failed to prove that there was an offer, acceptance, and mutual assent. Appellant's Brief at 34. He also complains that there was no documentary evidence, such as receipts or bank statements, to corroborate or support Ms. Tran's self-serving

---

[9] A subsequent tabulation sent by Ms. Tran on April 4, 2019, shows that Appellant made payments in November and December of 2018.

[10] Regarding the effect of partial payments, Appellant only argues that "[a]n alleged partial payment is not considered an acknowledgment of a debt under Pennsylvania law and does not take the case outside the statute of limitations." Appellant's Brief at 27. He cites no authority in support of this contention. *See Hardy*, *supra*. Further, Appellant's position is inconsistent with the case law discussed *supra*.

testimony. *Id.* at 34-35. Finally, he says that the text messages do not establish anything, as they were also self-serving. *Id.* at 35.

Initially, with respect to Appellant's argument that Ms. Tran failed to prove that there was an offer, acceptance, and mutual assent, Appellant sets forth no legal authority to develop this contention. We reiterate that:

> When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. … This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.

*See Hardy*, *supra*. Due to Appellant's failure to proffer any legal authority in support of his claim that offer, acceptance, and mutual assent were not established, we deem this aspect of his issue waived.

Nevertheless, even if not waived, no relief would be due. Pertinent to Appellant's argument, this Court has previously explained:

> It is … well settled that in order for an enforceable agreement to exist, there must be a "meeting of the minds," whereby both parties mutually assent to the same thing, as evidenced by an offer and its acceptance. It is equally well established that an offer may be accepted by conduct and what the parties do pursuant to the offer is germane to show whether the offer is accepted. In cases involving contracts wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to the surrounding circumstances and course of dealing between the parties in order to ascertain their intent. We must, therefore, look to the parties' course of conduct to ascertain the presence of a contract.

*United Environmental Group, Inc. v. GKK McKnight, LP*, 176 A.3d 946, 963 (Pa. Super. 2017) (citation omitted).

Here, viewing the evidence in the light most favorable to Ms. Tran as the verdict winner, *see A.Y.*, *supra*, Ms. Tran testified that she made four loans to Appellant after he asked her to do so, she talked to Appellant before making each one, and they had an understanding that they were loans, not gifts. *See* N.T. at 33, 35-36, 74, 79-80, 99-100. Ms. Tran said that Appellant paid back a portion of the loan. *Id.* at 47. Further, text messages introduced at trial showed that Appellant acknowledged the debt and submitted payments for the loans to Ms. Tran. *See generally id.* at 44-68. Based on the above-stated evidence, even if not waived, we would determine that the record supports that there was an offer, acceptance, and mutual assent, in contravention of Appellant's argument.[11]

Moreover, to the extent Appellant complains about Ms. Tran's self-serving testimony, the lack of corroborating documentary evidence, and the purportedly self-serving nature of the text messages, we remind Appellant that, "[c]oncerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact." *See A.Y.*, *supra*. Such complaints go to the weight, not the sufficiency, of the evidence. *See also Lewis v. UPMC Health Plan, Inc.*, 2024 WL 749936, at *3 (Pa. Super. filed Feb. 23, 2024) (unpublished memorandum) ("When

---

[11] Because these are the only aspects of the contract that Appellant contests, we address no other aspects. *See Hardy*, *supra*.

reviewing a sufficiency claim in a civil case, an appellate court must view all the evidence and reasonable inferences therefrom in the light most favorable to the verdict winner and determine whether the evidence was sufficient to enable the fact[-]finder to find that all the elements of the causes of action were established by a preponderance of the evidence. By contrast, a weight claim challenges the fact-finder's acceptance of one party's evidence over the other party's evidence. A true weight-of-the-evidence challenge concedes that sufficient evidence exists to sustain the verdict or non-jury decision but questions which evidence is to be believed.") (cleaned up).[12] Thus, based on the foregoing, Appellant's sufficiency challenge warrants no relief.

**Third Issue**

In Appellant's third issue, he challenges the weight of the evidence.[13] He again claims that Ms. Tran's testimony was self-serving, and he reiterates that there was a lack of corroborating documentary evidence (*i.e.*, bank statements and receipts). Appellant's Brief at 36. In addition, he disputes the weight of the text messages, claiming that they are also self-serving and

_____

[12] **See** Pa.R.A.P. 126(b) (stating that an unpublished non-precedential memorandum decision of the Superior Court filed after May 1, 2019, may be cited for its persuasive value).

[13] Though Appellant correctly asks for a new trial based on the weight of the evidence in his Statement of the Questions Involved, **see** Appellant's Brief at 10, he includes his argument based on the weight of the evidence under the section of his brief asking for JNOV. **See id.** at 33, 35-37. We remind Appellant that a new trial is the sole remedy where the verdict is alleged to be against the weight of the evidence. **See Lanning v. West**, 803 A.2d 753, 766 (Pa. Super. 2002)(citation omitted).

do not tell the whole story, and says that the testimony about Tom Nguyen's not betting on sports is incredible. *Id.* at 36-37.

In reviewing Appellant's weight claim, we are mindful that:

Typically, a weight claim is filed after a jury trial in the hope that the trial court judge who, like the jury, had an opportunity to hear the evidence and observe the demeanor of the witnesses, will conclude that the verdict was so contrary to what it heard and observed that it will deem the jury's verdict such a miscarriage of justice and trigger the court's time-honored and inherent power to take corrective action.

In asserting a weight claim, the moving party employs the discretion of the trial judge. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The fact[-]finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court awards a new trial only when the jury's verdict or non-jury decision is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's decision based on a weight-of-the-evidence claim is among the least assailable of its rulings. Finally, although weight claims have been considered in non-jury cases, there is a logical inconsistency in asking a trial judge to conclude that his non-jury decision shocked his own conscience.

*Lewis, supra*, at *3 (cleaned up).

Here, in denying Appellant's weight challenge, the trial court explained that it "found that the multitude of text messages compounded by Appellant's consistent payments to [Ms. Tran] had substantial probative value towards the validity of an oral contract between both parties." TCO at 8. We discern no abuse of discretion by the trial court in determining that its decision was not so contrary to the evidence as to shock one's sense of justice. We also

- 26 -

emphasize that the trial court was free to credit Ms. Tran's testimony and the text messages, even though no other documentary evidence was presented. The trial court was likewise free to disregard Appellant's insistence that Tom Nguyen used the money for sports betting. As such, Appellant's weight claim merits no relief.[14]

Judgment affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/11/2024

---

[14] Due to our disposition of Appellant's second issue, we need not separately address his fourth and fifth issues, which assert the same arguments that the statute of limitations bars Ms. Tran's claim. Thus, to the extent these issues are not moot by virtue of the fact that this case proceeded to trial, no relief would be due on the merits for the reasons set forth *supra*. **See** pages 15-22, **supra** (explaining why the acknowledgment doctrine tolled the running of the statute of limitations).